**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald DOUGHTY, Defendant-Appellant.**

**No. 71–1343.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1971.

Decided May 4, 1972.

Paul P. Lipton, Milwaukee, Wis., for defendant-appellant.

David J. Cannon, U. S. Atty., Richard E. Reilly, Steven C. Underwood, Asst. U. S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Before KILEY, FAIRCHILD and STEVENS, Circuit Judges.

KILEY, Circuit Judge.

Donald Doughty (defendant) has appealed from his conviction, following a bench trial, of aiding and abetting his wife Florence in "wilfully and knowingly" attempting to "evade or defeat" payment of federal estate taxes in violation of 26 U.S.C. § 7201. Sentence was pronounced, but suspended, and Doughty was placed on probation for one year. We affirm.

Florence Doughty's mother died in January, 1964. After her death the Doughtys went to decedent's home and removed a large sum of old currency wrapped mostly in old newspapers and handbills. On February 15, 1965, Florence Doughty filed an estate tax return dated September 30, 1964, signed by her. She listed no cash in the estate. After investigation by the FBI and the IRS, the indictment[1] before us was filed and defendant's trial and conviction followed.

The investigation leading to defendant's conviction began when the FBI learned that he had placed in a Las Vegas, Nevada, motel safe nearly $22,000 in "old dirty" currency, wrapped in old newspapers. Suspecting that the bills were proceeds of a recent robbery, FBI agent Doran on October 24, 1968 proceeded to interview defendant after obtaining from him a signed *Miranda* waiver of rights form. Defendant told the agent that he and his wife went to decedent's home shortly after her death and removed a large sum of money. He said they told no one "for fear that they would lose it to taxes."

On February 27, 1969, IRS special agent Stieber, who had learned of the previous FBI interview with defendant, interviewed Florence Doughty. He told her of his information that defendant had money in Las Vegas which came from her mother's estate. She thereupon brought out four metal boxes containing old currency wrapped in handbills and newspapers. Stieber counted the money which totaled $54,065.00.

On March 6, 1969, Stieber interviewed defendant at the IRS office. After being informed of the agent's investigation into possible criminal violations for tax liability, defendant signed a *Miranda* waiver form. Defendant then made an affidavit which recited how money had been taken by him and his wife from decedent's home and placed in metal boxes. The affidavit also stated that they did not tell their attorney about the money because they did not want to pay the taxes due on it.

I.

Defendant contends that there is insufficient evidence to sustain his conviction as an aider and abetter. There is no merit in the contention.

There is ample evidence in defendant's admissions and the false return to prove that both Doughty and his wife intended to evade the tax due upon the unreported cash. That testimony also justified the district court's inference that the Doughtys' motive was not to safeguard decedent's money against loss by fire or other hazard. Furthermore, on that testimony the court could also reasonably find that defendant knew his wife intended, when the money was removed, not to report the cash, and that the intention of both not to report it continued to exist fifteen months later when the false return was filed.

It was unnecessary for defendant's conviction of aiding and abetting that the government prove he helped prepare and file the false return. It was sufficient that he participated in the commission of the offense by helping conceal the cash which was unre-

---

[1] The indictment charged the Doughtys with intent to evade and defeat estate taxes by falsifying the tax return and reporting the taxable estate as $55,594.00 with a tax due of $8,273.75, when they knew that the taxable estate was $136,157.09 with a tax due of $30,408.62.

ported. *See* United States v. Frazier, 365 F.2d 316, 318 (6th Cir. 1966), cert. den. 386 U.S. 971, 87 S.Ct. 1164, 18 L. Ed.2d 130. Neither was the government required in convicting defendant to prove that Florence Doughty had been convicted of tax evasion, as a principal, or even that she be identified as the one whom he was aiding. The government was merely required to show that someone committed the offense in which he had a part. Feldstein v. United States, 429 F.2d 1092, 1095 (9th Cir. 1970); United States v. Provenzano, 334 F.2d 678, 691 (3rd Cir. 1964), cert. den. 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544. It is true that a person cannot aid and abet himself in committing an offense, and that such a person cannot be found guilty unless there is satisfactory evidence that "another for whom he was acting was connected with the offense." United States v. Horton, 180 F.2d 427, 431 (7th Cir. 1950). Agent's Stieber's testimony of his interview with Florence Doughty was sufficient to show her "connection" with the alleged offense.

■ Defendant next argues that the statements made during the course of his interviews with the government agents are uncorroborated. We think, however, that the evidence of what transpired in Las Vegas, the removal of the money and its transfer to the metal boxes, and the failure to report the cash, is independent evidence corroborating his admissions. This sufficiently "bolstered" the confessions by strengthening their trustworthiness. There was no error, therefore, in permitting the government to introduce the admissions. Opper v. United States, 348 U.S. 84, 92–94, 75 S.Ct. 158, 99 L.Ed. 101 (1954); Smith v. United States, 348 U.S. 147, 148–156, 75 S.Ct. 194, 99 L.Ed. 192 (1954).

## II.

■ We see no error in the district court's admitting into evidence, over objection, the estate tax return filed by Florence Doughty,[2] and the testimony of agent Stieber that he observed Florence Doughty bring out the metal boxes containing the cash, in his interview with her.

The ancient common law rule with respect to the marital privilege precluding testimony of either spouse for or against the other in criminal cases has been somewhat broadened in the United States. In Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933), the Court reversed the conviction because the district court had refused to permit defendant's wife to testify *for* him. But in Hawkins v. United States, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), the Supreme Court rejected the government's argument that the marital privilege rule should be further modified to permit, over objection, either spouse to testify voluntarily *against* the other.

Agent Stieber testified that during the course of the interview Florence Doughty brought out four metal boxes containing the packets of old currency. Defendant argues that the rule prohibiting one spouse from testifying against the other extends to all incriminating "communications"—not only oral or written—by a spouse. However, he does not cite, and we have not found, a decision to support his argument that the agent's testimony here violated the rule.

■■ We shall assume, but not decide, that under a liberal application of the marital privilege rule Florence Doughty's action was a communication —and that to be privileged a communication need not be confidential between spouses. Nevertheless, we find no error in admitting Stieber's testimony as to what he observed Doughty's wife do, in the circumstances of this case.

The boxes were produced after Florence Doughty knew of the agent's knowledge that the defendant had cash

2. There is no merit to Doughty's argument that the admission of the return violated the hearsay rule. The return was introduced, not to prove the truth of anything stated in the return, but merely to show what in fact had been declared. We reject the argument, in the instance of this case, that the return was not binding on him.

from the estate in Las Vegas. This information indicated to her that the scheme to avoid paying the taxes was in trouble. Her production of the boxes of cash could not have been aimed at defendant with any strong feeling against him. There is nothing to show that he took the cash against her will. We are not persuaded that she was communicating testimony against him likely to cause resentment in him, or that his subsequent affidavit that they both had placed the cash in metal boxes would probably cause resentment in her.

The Doughtys were in the unlawful enterprise together, and we think it highly unlikely that the court's admission of the testimony concerning the metal boxes militated against their domestic peace or offended the public interest which the rule in *Hawkins* sought to protect.

We agree with the government that in this case the marital privilege was not violated. As the Supreme Court stated in *Hawkins:*

> The basic reason the law has refused to pit wife against husband or husband against wife in a trial where life or liberty is at stake was a belief that such a policy was necessary to foster family peace, not only for the benefit of husband, wife and children, but for the benefit of the public as well. 358 U.S. at 77, 79 S.Ct. at 138.

Here Doughty's wife did not testify as a witness against him. United States v.

Mackiewicz, 401 F.2d 219, 225 (2nd Cir. 1968), cert. den. 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258.[3] And we see no basis from which to infer that the introduction of the estate tax return would have any adverse effect upon what harmony existed between the spouses. Nor do we think that the admission of the return would offend the government policy of encouraging family harmony. This is especially so in view of the participation of both husband and wife in the offense.

Doughty's reliance on Olender v. United States, 210 F.2d 795 (9th Cir. 1954), is misplaced. There the court held only that the privilege had been waived by the failure of Olender or his wife to invoke the privilege at the trial. *Olender* would support the view that Doughty waived the privilege here, since he subsequently confirmed in his March 6 affidavit his wife's February 27 "communication" to the agent concerning the "metal boxes." He effectually freely approved the disclosure. *See* Peek v. United States, 321 F.2d 934, 943 (9th Cir. 1963), cert. den. 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973. And since there was no conflict between the wife's communication to the agent and the defendant's own admissions, we are unable to see how family harmony in this situation would be threatened.

For the reasons given, the judgment is affirmed.

---

3. Defendant also relies on Ivey v. United States, 344 F.2d 770 (5th Cir. 1965), where the court decided that the marital privilege rule rendered inadmissible an agent's testimony of an out-of-court statement of Ivey's wife which incriminated Ivey. She testifed on Ivey's behalf at trial contradicting her earlier statement made to the agent. The court applied the *Hawkins* rule and merely stated that "reason and experience" did not dictate admitting the agent's testimony. The court then added that the wife's statement to the agent had been made while she was in detention and under the influence of narcotics.

We think *Ivey* is distinguishable on its facts from the case before us. We prefer the view of the court in United States v. Mackiewicz, 401 F.2d 219, 225 (2nd Cir.

1968), cert. den. 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258. There the court pointed out that the spouse who had given incriminating statements against her husband to an agent had not been called to the stand. The court thought that the agent who testified was a "buffer" between the spouses, thus removing the chance of marital friction. The court found no error in admitting the agent's testimony.

The case before us is not a case where a wife purposefully made an incriminating communication against her husband. The communication to the agent of the "metal boxes" was, if at all, equally incriminating to the wife, thus making the possibility of marital discord between the two that much more remote.