**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert E. CLEVELAND, Defendant-
Appellant.**

No. 72–1471.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1973.

Decided April 16, 1973.

Rehearing Denied May 7, 1973.

Joseph A. Lamendella, Samuel J. Betar, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck and Ann P. Sheldon, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, CUMMINGS and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

Defendant was indicted and convicted on three counts of tax evasion in violation of 26 U.S.C. § 7201. On appeal, he raises numerous issues relating to the sufficiency of the evidence, several evidentiary rulings, the *voir dire*, the instruction of the jury, and the application of the Jencks Act, 18 U.S.C. § 3500. Only the final point has merit.

■■ The prosecution was based on the "net worth" theory of proof. This theory assumes that a taxpayer's increase (or decrease) in net worth plus his nondeductible expenses (less nontaxable receipts, if any) during the tax year should equal his taxable income. If there is a substantial unexplained discrepancy between this figure and the amount actually reported, the inference that taxable income was not reported is sufficient to support a conviction. See Capone v. United States, 51 F.2d 609 (7th Cir. 1931); Guzik v. United States, 54 F.2d 618 (7th Cir. 1931). Although the theory puts the burden of explaining the discrepancy on the defendant, and has other deficiencies, the Supreme Court has approved its use. United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L. Ed. 150.

> "While we cannot say that these pitfalls inherent in the net worth method foreclose its use, they do require the exercise of great care and restraint. The complexity of the problem is such that it cannot be met merely by the application of general rules. Cf. Universal Camera Corp. v. Labor Board,

340 U.S. 474, 489 [71 S.Ct. 456, 95 L. Ed. 456]. Trial courts should approach these cases in the full realization that the taxpayer may be ensnared in a system which, though difficult for the prosecution to utilize, is equally hard for the defendant to refute . . . Appellate courts should review the cases, bearing constantly in mind the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation." 348 U.S. at 129, 75 S.Ct. at 132.

With this admonition in mind, we turn to the case at hand.

## I. Sufficiency of the Evidence.

The government's calculations indicate that defendant failed to report $6,064.76 in 1964; $6,744.92 in 1965; and $5,864.-35 in 1966, the three indictment years. By way of contrast, he reported no income in 1964; $102.10 in 1965; and $1,591.04 in 1966. Cleveland argues that close examination of the government's case reveals that the proven discrepancies were only $909.00 in 1964; no taxable income in 1965 (although he reported $102.10); and $2,839.00 in 1966. The proven discrepancies in 1964 and 1966, he argues, are not substantial enough to support a conviction.

### 1964

Cleveland claims the government made four errors in its schedules for 1964. First, the government included as an increase in net worth $5,000 received in settlement of a lawsuit, but did not enter the same amount as a liability to his client. There was evidence at trial, however, which showed that Cleveland felt no obligation to pass the money on to his client and in fact had used it for his own purposes. Nor had any attempt to collect it ever been made. Tr. 150. This evidence was sufficient to establish that the $5,000 was income. Rutkin v. United States, 343 U.S. 130, 136–137, 72

S.Ct. 571, 96 L.Ed. 833 (1954); United States v. Wyss, 239 F.2d 658 (7th Cir. 1957).

Second, defendant contends he should have been credited $800 on the purchase price of a building (the Foster Avenue building). The closing statement shows a credit of $800 for "6 stoves and 2 refrigerators." Gov.Ex. 41C, App. 78–79. Defendant's expert witness testified that this represented "a reduction in purchase price." [1] Even though we must view the evidence most favorably to the government, for purposes of decision we accept this testimony. Nevertheless, the $800 is immaterial in light of the other evidence of guilt.

Third, Cleveland contends that he overstated on his 1964 tax return the interest expense on the Foster Avenue property, thereby creating the impression of additional resources available to defendant during the tax year. The government, however, did not rely on the tax return in its computations. It relied instead on the Liberty Savings and Loan Mortgage payment ledger cards. Gov. Ex. 41. Defendant stipulated to the interest figures contained therein. Gov. Ex. ZZZ.

Fourth, the government did not credit defendant for $636 in insurance commissions received by him on his own life insurance policy. Defendant's own expert witness recognized that the amount was income. Tr. 341–342. Cleveland was not entitled to credit for the sum since it was income.

The findings with respect to defendant's 1964 income are supported by the record.

### 1965

The primary objection to the government's computations for 1965 concerns the inclusion of $8,116.99 in a Glencoe Bank checking account in the name of defendant's wife. Cleveland contends that those funds cannot be traced to

---

1. There was no precise explanation of why the credit was given. It could, of course, represent payment by the defendant of an obligation of the seller, in which case it would not reduce the purchase price.

him. The Clevelands were married in 1962; they separated in 1965. The account was opened, maintained, and closed in 1965. The evidence showed that Bernice Cleveland had no income during her marriage. Defendant alleges that Mrs. Cleveland brought $30,000 into the marriage. We find no evidence supporting this allegation. The only evidence introduced on the point indicates that she brought roughly $2,000 into the marriage. Tr. 88, 90. The evidence was sufficient to support the inference that the $8,116.99 was income to Cleveland.

Appellant also argues that he is entitled to a theft loss on the $8,116.99 because his wife took the money on dissolution of the marriage. There was no theft, however, since defendant gave the money to his spouse for deposit in her separate account. A gift does not entitle one to a theft loss.

The evidence on the $8,116.99 and all other elements of the government computation are supported by the evidence.

### 1966

Defendant contends that the 1966 figures are incorrect because they treat loans from three friends as income. The testimony of the three was quite dubious, and the jury evidently did not believe that the payments totalling $3,925 were loans. In any event, appellant admits a proved unaccounted for difference of $2,839 in a year when he reported only $1,591.04. In view of the fact that this is an amount which was computed without making any realistic allowance for normal living expenses, we cannot accept his contention that the amount is insubstantial.

■ The evidence was sufficient to support the government's calculations for each of the three indictment years. The consistent pattern of income understatement proven in this case is sufficient to support the inference of willful-

ness. Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150.

II. *The Admissibility of Evidence.*

Defendant argues that his objections to certain government evidence were improperly overruled. The objections were grounded on the marital privilege, the Fifth Amendment, and the rule against evidence of unrelated criminal activity.

In preparing its case, the government conducted many interviews with defendant's former wife, Bernice. Although she never testified at trial, defendant sought to suppress all information and leads obtained from her, contending that the interviews violated the marital communications privilege. The trial court refused to hold a hearing on the matter.

■ Although testimony by a government agent as to what a spouse said would be inadmissible in the Fifth Circuit,[2] the rule is otherwise in the Second Circuit.[3] As we stated in United States v. Doughty, we prefer the view of the Second Circuit. See 460 F.2d 1360, 1364 n. 3 (7th Cir. 1972). In any event, no such testimony was given at this trial, and we find no authority for the broad exclusionary rule advocated by defendant. See the Advisory Committee Notes to Rule 504, Proposed Federal Rules of Evidence.

At defendant's trial, the government read to the jury portions of the transcript of divorce proceedings involving Cleveland and his spouse, Bernice. That transcript contains numerous admissions by defendant as to his financial condition. Since the government did not read to the jury all relevant portions of the transcript, defendant contends it was permitted to "pick and choose from the taxpayer's statement" in violation of Holland v. United States, 348 U.S. 121, 128–129, 75 S.Ct. 127, 132, 99 L.Ed. 150. Appellant's reliance on that portion of the *Holland* opinion is completely mis-

---

2. United States v. Williams, 447 F.2d 894 (5th Cir. 1971); Ivey v. United States, 344 F.2d 770 (5th Cir. 1965).

3. United States v. Mackiewicz, 401 F.2d 219, 225 (2d Cir. 1968), cert. denied, 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258.

placed. That discussion was concerned with the need for corroboration of admissions made to Internal Revenue agents; it had nothing to do with the use of portions of a transcript, the complete text of which is available to both parties.

Appellant also raises the Fifth Amendment as a bar to selective introduction of the transcript. He concedes that the entire transcript could have been read to the jury without offense to his Fifth Amendment rights. Since the government chose to read only part of it, he contends that he could not have read additional excerpts to the jury without, in effect, commenting on his failure to testify. We find no merit in this argument.

His next point relates to testimony on the $5,000 received by Cleveland in settlement of a lawsuit. The government deemed it income to Cleveland because he had appropriated it to his own use. The evidence supported this conclusion. Defendant properly points out that evidence of past crimes is not ordinarily admissible because of the danger of prejudice. But in this case, defendant strenuously contended that the $5,000 was not income since it belonged to his client. On that issue, evidence that Cleveland defied his obligation to his client and appropriated the money to his own use was properly admitted.

The appellant also argues that evidence of understatement of income in pre-indictment years is not admissible. The government had introduced evidence to that effect for 1961, 1962, and 1963 although prosecuting only for 1964, 1965, and 1966. Such evidence is admissible to show the element of willfulness. United States v. Shavin, 320 F.2d 308, 314 (7th Cir. 1963), cert. denied, 375 U. S. 944, 84 S.Ct. 349, 11 L.Ed.2d 273.

### III. *The Voir Dire.*

The defendant proposed the following question for *voir dire*: "Would you give greater credence to the testimony of an expert witness employed by the Internal Revenue Service merely because he is an Internal Revenue Service Officer?" Defendant assigns error to the fact that the trial judge, who personally conducted the *voir dire,* declined to ask the proffered question but instead asked:

"Now, I will make this statement to you and I will make it—it applies also to the other eleven prospective members of this jury: In this case there undoubtedly will be evidence furnished by certain witnesses who may, in one respect or another, be employees of the Internal Revenue Service, of the United States Government. There may be other government witnesses. I will make this statement and I will ask you whether or not you think that this is a fair statement. These witnesses would be entitled to no greater or no less credence from the jury than any other witness who may take the witness stand. Would you agree with that?" Supp.Tr. 12.

The trial court also instructed the jury to "apply the same standards to the testimony of each expert, whether produced by the government or the defendant." Tr. 409–410. The judge did not err in refusing to ask the proffered question.

### IV. *Jury Instructions.*

In a manner similar to his handling of the *voir dire,* the trial judge refused several instructions offered by defendant on the issue of willfulness; the court gave the standard La Buy instruction. We have examined that instruction as well as those advanced by defendant and conclude that the trial court adequately instructed the jury. See Tr. 395–414.

After some twenty hours of deliberation, the court received the following communication signed by the jury foreman:

"Judge Decker, in order that the jury arrive at a fair and just decision, we are requesting another clarification of the word 'willful' and its significance to this case as it relates to

the guilt or the innocence of the defendant Robert Cleveland of the charge as included in the government's indictment."

In response, the court reread portions of the original instructions describing the nature of the case and defining the term "willfulness." Tr. 423–425. While the court could have avoided any problem by sending a copy of the complete instructions in with the jury at the start of deliberations as is sometimes done, we are satisfied that the procedure followed in this case did not mislead or confuse the jury.

### V. *Section 3500 Statement.*

Special Agent Carey testified at length as a government witness. Defendant requested the trial judge to make an *in camera* inspection of a report Carey had prepared and to order the government to produce that part of the report which "relates to the subject matter of Agent Carey's testimony." The judge directed the government to give him the report the following morning, stating that he would "take a look at it." The next morning, without clearly indicating whether or not he had examined the report, the judge stated that he was "going to adhere to my ruling that no portion of the report comes under a 3500 statement."

The government defends this ruling on alternate grounds: First, that the judge did in fact make the *in camera* inspection which defendant requested; and, second, that in any event a Special Agent's Report is not a "statement" producible under the Jencks Act, 18 U. S.C. § 3500.

We are persuaded by appellant's analysis of the relevant colloquies that the record does not demonstrate that the judge examined the report. The document is not before us and the record contains no finding or other unambiguous comment indicating that the judge did in fact review Carey's report. A more reasonable interpretation of the transcript is that the judge construed our holding in the second *Keig* case [4] as establishing a rule for this circuit that a Special Agent's Report is, as a matter of law, not a "statement" within § 3500. Although the government so interprets *Keig,* and there is indeed language in the opinion which supports this interpretation, we have concluded that the statute may not be so construed.

Two problems which recur under § 3500 must be separately identified. First, is a document which has been prepared by a government witness a "statement" as defined in subsection (e) [5]; and, second, if so, is it producible pursuant to subsection (b) ? [6]

4. United States v. Keig, 334 F.2d 823, 825 (7th Cir. 1964). The first *Keig* opinion is reported at 320 F.2d 634 (7th Cir. 1963). In the first case we reversed and remanded with instructions to the trial court to make an *in camera* inspection of a Special Agent's Report. On remand, the trial court found that the statement was not producible and in the second *Keig* appeal we affirmed that determination.

5. Subsection (e) reads as follows:
"(e) The term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—
(1) a written statement made by said witness and signed or otherwise adopted or approved by him;
(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially

verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.
Added Pub.L. 85–269, Sept. 2, 1957, 71 Stat. 595, and amended Pub.L. 91–452, Title I, § 102, Oct. 15, 1970, 84 Stat. 926."

6. Subsection (b) reads as follows:
"(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States *which relates to the subject matter as to which the witness has testified.* If

█ The definition of the term "statement" in subsection (e)(1)—assuming that the plain language means what it says—includes the report of a government agent who testifies as a prosecution witness. It has commonly been so held,[7] and Revenue agents are treated like other government agents who testify at the trial.[8] We must, therefore, conclude that Special Agent Carey's written report was a "statement."

█ That conclusion does not necessarily mean that the statement was producible. For the right to production turns on whether the content of the statement "relates to the subject matter as to which the witness has testified" within the meaning of subsection (b). The procedure for answering that question is thoroughly and accurately described in Senior Judge Hastings' opinion in United States v. O'Brien, 444 F. 2d 1082 (7th Cir. 1971), see especially 1086–1087. Suffice it to say here that since Special Agent Carey's report was a "statement" within subsection (e), subsection (c) of the statute required the judge to make the *in camera* inspec-

tion requested by defendant in order to determine whether any part of the report was producible. Since we cannot be sure this was done, following the procedure set out in *O'Brien* we vacate the judgment and remand for further proceedings. If the trial judge determines that no part of the report need be produced, he should enter a fresh judgment. Defendant may then have the report sealed and transmitted to this court for review of the lower court's determination. If, on the other hand, he concludes that production was wrongfully denied, it would then become his duty to accord defendant a new trial.[9]

This disposition of the appeal is not necessarily inconsistent with the *holding* in *Keig* because the statements there involved were not producible pursuant to subsection (b) unless they related to the testimony of Agent Marici. We do, however, expressly disapprove of the language of that opinion insofar as it may be read to imply that a Special Agent's Report is not a statement within subsection (e).[10]

Judgment vacated and remanded with directions.[11]

---

the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use." (Emphasis added.)

7. Clancy v. United States, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574, rev'g., 276 F.2d 617 (7th Cir. 1960); United States v. Sheer, 278 F.2d 65, 67–68 (7th Cir. 1960); United States v. Berry, 277 F.2d 826 (7th Cir. 1960); United States v. McCarthy, 301 F.2d 796, 797–799 (3rd Cir. 1962); Lewis v. United States, 340 F.2d 678 (8th Cir. 1965); Mims v. United States, 332 F.2d 944, 948 (10th Cir. 1964) (government conceded point).

8. United States v. O'Connor, 273 F.2d 358, 360–361 (2d Cir. 1959).

9. We do not preclude the possibility that error which may have stemmed from an understandable reliance on *Keig* might be

harmless if it is perfectly clear that the defense was not prejudiced. See United States v. Aaron, 457 F.2d 865 (2d Cir. 1972).

10. This comment is, of course, also applicable to the dictum in United States v. Krilich, 470 F.2d 341 (7th Cir. 1972) page 351 n. 18, and to comments in United States v. Lacob, 416 F.2d 756, 761 (7th Cir. 1969), insofar as they so interpret *Keig*.

This opinion has been circulated to all of the active members of the court. No judge has requested that the case be heard en banc.

11. To avoid a possible dispute over the application of Circuit Rule 23, in the event that Judge Decker shall determine that a new trial is necessary, we direct that all proceedings pursuant to our remand, including such possible retrial, be conducted by Judge Decker.