**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Norman TSINNIJINNIE,**
**Defendant-Appellant.**

**No. 78–3522.**

United States Court of Appeals,
Ninth Circuit.

June 29, 1979.

Rehearing Denied Aug. 27, 1979.

Michael L. Piccarreta, Phoenix, Ariz., argued, for defendant-appellant; Susan Wintermute, Asst. Federal Public Defender, Phoenix, Ariz., on brief.

Daniel R. Drake, U. S. Atty., argued and on brief, for plaintiff-appellee.

Before TRASK and GOODWIN, Circuit Judges, and NIELSEN, District Judge.*

NIELSEN, District Judge:

Norman Tsinnijinnie appeals a judgment of conviction of voluntary manslaughter (18 U.S.C. § 1153). The primary issue on appeal is whether Tsinnijinnie's privilege to preclude his spouse from testifying against him was violated by a third person relating an out-of-court utterance by Tsinnijinnie's wife. In addition, he claims the trial judge erred by excluding expert testimony, by admitting evidence of a prior altercation, by explaining to the jury why appellant's wife did not testify and by declining to give a jury instruction that appellant had requested.

We hold that the marital privilege was not violated by the admission of the out-of-court statement of the wife, and find no error in the admission or exclusion of evidence or the jury instructions.

Tsinnijinnie was indicted for second degree murder of his mother-in-law, Florence Dejolie, and attempted murder of his wife, Rena Tsinnijinnie. Tsinnijinnie and his wife are Navajo Indians, as was the victim, and the offense occurred in Indian country, thus making the acts a federal crime (18 U.S.C. § 1153). The Government alleged that Tsinnijinnie had driven his pickup truck to his mother-in-law's hogan, where he found her and his wife. He argued briefly with them, threatening to kill his mother-in-law, Florence, and then rammed his truck into the hogan. Florence fled and Tsinnijinnie backed the truck away from the hogan and drove down an adjacent road where he struck and killed Florence. His defense was that Florence had fallen down while fleeing and had been run over accidentally.

---

* Honorable Leland C. Nielsen, United States District Judge for the Southern District of California, sitting by designation.

The Government dismissed the attempted murder count because there was confusion over whether federal statutes make it a crime when committed in Indian country. (18 U.S.C. §§ 1153, 1113, 1152.) Tsinnijinnie was tried on the second degree murder charge and the jury convicted him of voluntary manslaughter, a lesser included offense.

## MARITAL PRIVILEGE

Tsinnijinnie invoked the "anti marital facts privilege" to preclude his wife from testifying against him. However, another witness, Harold Dejolie, testified that moments after the truck ran over the victim he heard Rena Tsinnijinnie exclaim, "He [Tsinnijinnie] ran over my mother." This statement fell within the excited utterance exception to the hearsay rule, but Tsinnijinnie contends that permitting Harold Dejolie to relate it violated the marital privilege.

Witnesses' privileges in federal courts are governed by Rule 501, Fed.R.Evid., which provides, in part, that privileges shall be "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." There are two privileges arising from the marital union recognized in federal courts: one for confidential communications, *Blau v. United States,* 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951); and another which precludes one spouse from testifying against the other absent a waiver, *Hawkins v. United States,* 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958). It is this latter privilege, commonly referred to as the anti marital facts privilege, that is involved here.

There is disagreement among courts and scholars on whether this spousal privilege should preclude a third person from relating an out-of-court statement made by a spouse. The Ninth Circuit has stated in dicta that the privilege does preclude such testimony. In *Peek v. United States,* 321 F.2d 934 (9th Cir. 1963), *cert. denied,* 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973 (1964), an out-of-court statement the wife had made to an FBI agent was introduced against the husband through the agent's testimony. A panel of this Circuit noted that the marital privilege "includes the prohibition against a third person relating a statement made by one spouse against the other which that spouse would not be allowed to relate if called as a witness." *Id.* at 943. However, the privilege had been waived in *Peek,* so the language was merely dictum.

Similarly, *Olender v. United States,* 210 F.2d 795 (9th Cir. 1954), *cert. denied,* 352 U.S. 982, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957), and *United States v. Price,* 577 F.2d 1356 (9th Cir. 1978), state that the rule in this Circuit is that extrajudicial statements of one spouse cannot be introduced against the other spouse. Again, however, the language in both cases was wholly unnecessary to the holdings; in *Olender* there had been a waiver of the privilege and in *Price* the spouse's statements were admitted as admissions of a coconspirator.

The Fifth Circuit has followed the dictum from *Peek* and held that extrajudicial statements of a spouse cannot be introduced against the other spouse, *Ivey v. United States,* 344 F.2d 770 (5th Cir. 1965); *United States v. Williams,* 447 F.2d 894 (5th Cir. 1971). That Circuit reasons that permitting out-of-court statements to be introduced would undercut the marital privilege.

In addition, some of the more respected scholars have treated the question as an easy one, and concluded that hearsay statements are blocked by the privilege. Wigmore states:

> "It can be argued that that which is privileged is the testimonial utterance in any form, by wife or husband, offered against the other. Hearsay statements—oral or documentary—are testimonial utterances. Hence, it would follow that they are equally privileged with testimony on the stand."

8 *Wigmore on Evidence* § 2232 (rev. McNaughton 1961).

Professor Wright reached the same conclusion:

"The rule applies not only to testimony by the spouse from the witness stand but also requires exclusion of out-of-court statements made by one spouse in writing or to a third person."

2 Wright, *Federal Practice and Procedure* § 405 at 87 (1969).

Despite these pronouncements, and the dictum from *Peek,* we do not believe the issue has been laid to rest in this Circuit. This panel is not bound by dicta from prior cases, *Kastigar v. United States,* 406 U.S. 441, 456, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), and is given the ongoing task of defining rules in this area "in the light of reason and experience." Rule 501, Fed.R. Evid. Thus, we must consider whether there are sound reasons for applying the spousal privilege to bar testimony of third persons.

Witnesses' privileges are inherent barriers to the fact-finding mission of trial courts. They operate to exclude relevant, probative evidence and run counter to the general proposition that each person must present all of the relevant evidence within his or her grasp. For this reason the Supreme Court directed that privileges be construed narrowly. *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

The marital privilege has been singled out from other privileges for especially harsh criticism. Much of the criticism stems from distaste for the paternalistic attitude toward marriage it reflects and doubt as to whether it serves any purpose. Wigmore complained:

"This privilege has no longer adequate reason for retention. In an age which has so far rationalized, depolarized and dechivalrized the marital relation . . this marital privilege is the merest anachronism in legal theory and an indefensible obstruction to truth in practice."

Wigmore, *supra,* § 2228 at 221.

McCormick leveled a similar criticism of the confidential communications privilege that is equally applicable to the testimonial privilege:

"[A]ll privileges, in general, and this privilege for marital confidences in particular, are inept and clumsy devices to promote the policies they profess to serve, but are extremely effective as stumbling blocks to obstruct the attainment of justice. Accordingly the movement should be toward restriction, and not toward expansion, of these mechanisms for concealment of relevant facts."

McCormick, *Evidence* § 79 at 165 (2d ed. Cleary ed. 1972).

In light of these criticisms, we should consider whether the purposes of the privilege would be furthered by extending it to testimony by a third person. *Hawkins v. United States, supra,* outlined two justifications for the spousal privilege: fostering marital harmony and avoiding the spectacle of pitting one spouse against the other. It is unlikely that either goal is served by excluding a spouse's out-of-court statements.

In *United States v. Mackiewicz,* 401 F.2d 219 (2d Cir. 1968), *cert. denied,* 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 (1968), hearsay statements of a husband implicating his wife were admitted. The spouses were co-defendants and the admission could have been justified as coconspirator admissions, but the Second Circuit considered whether the marital privilege was even applicable to third party testimony. It concluded it was not, because the impact on marital harmony would be slight:

"This is not a case where the prosecution called the husband to the stand. If he had testified under those circumstances, the common law rule would have been violated. Here, however, we are one step removed from actual testimony. Therefore, there is no chance that we might be repulsed by a spouse actually testifying against his mate, see McCormick, *Evidence* § 66. Nor is there a chance that marital frictions will be aggravated, 33 Tul.L.Rev. 884, 890–92 (1959), for there is the convenient buffer of the third person actually making the remarks."

*Id.* at 225.

The Seventh Circuit indicated that it will follow *Mackiewicz. United States v.*

*Doughty,* 460 F.2d 1360, 1364 n. 3 (7th Cir. 1972); *United States v. Cleveland,* 477 F.2d 310, 313 (7th Cir. 1973). And Professors Louisell and Mueller cite *Mackiewicz* as the better rule, explaining:

"By the better view, the privilege does not apply with respect to out-of-court statements of a spouse. If these be relevant, and if hearsay objections are overcome, such statements should not be excludable by virtue of the instant privilege, at least insofar as they may be put in evidence through the testimony of some third person. A person holds no privilege to prevent his or her spouse from making adverse statements abroad in the world, and if this occurs and is revealed in court, it is the fact of the out-of-court conduct of the spouse, not the advent of the trial, which is the source of any strain upon the marriage."

2 Louisell & Mueller, *Federal Evidence* § 218 at 624 (1978).

■ We agree that the marital privilege should not be extended to bar a witness from relating an excited utterance by a spouse. The possible benefits that would derive from such an extension cannot justify excluding the evidence which is relevant and often highly probative. Experience demonstrates that the potential benefits of the marital privilege are often more imaginary than real; when a marriage has deteriorated to the point where one spouse makes statements damaging to the other, that marriage will usually proceed to its fate regardless of how the spousal privilege is applied.

Finally, there is little danger that permitting a spouse's hearsay statements to be introduced will lead to undercutting the marital privilege, as the Fifth Circuit feared in *Ivey, supra,* because any such statement will still be subject to the hearsay rule.

■ Accordingly, we hold the marital privilege was not violated by the admission of Tsinnijinnie's wife's excited utterance.

## REMAINING ISSUES

During closing argument Tsinnijinnie's attorney queried: "Who is the only witness against Norman [Tsinnijinnie]"? "Strangely enough, Harold Dejolie." Part of the defense theory of the case was an attempt to make Harold Dejolie appear biased against Tsinnijinnie and suggest that he had a motive to lie.

The Government objected to the remark, and the court agreed to explain to the jury why Rena Tsinnijinnie—the only other eyewitness—had not testified. The court stated:

"[I]n case you may be speculating by reason of any statements made during the course of argument, that the witness Rena Tsinnijinnie is not a witness at this trial because she is the wife of the defendant and the defendant has a right to invoke the husband/wife privilege and not have his wife testify at a trial and that is why she is not present."

Tsinnijinnie now claims this explanation violated the rule prohibiting adverse comment on invocation of the spousal privilege.

There is general agreement that it is improper to comment adversely on a defendant's exercise of the marital privilege, or to permit the jury to draw adverse inferences. *Courtney v. United States,* 390 F.2d 521 (9th Cir. 1968); *United States v. Tapia-Lopez,* 521 F.2d 582 (9th Cir. 1975); 8 Wigmore, *Evidence* § 2243; McCormick, *Evidence* § 66 at 145 (2d ed. Cleary ed. 1972).

But this case cannot be likened to *Courtney* where the prosecutor suggested to the jury that if the defendant's wife had testified her testimony would have been unfavorable to him. Nor is it like *United States v. Pariente,* 558 F.2d 1186 (5th Cir. 1977), where the prosecutor emphasized that defendant's wife would have been the logical witness to corroborate his story if it were true.

Instead, in this case Tsinnijinnie's attorney commented, albeit in a veiled manner, on the Government's failure to call Rena Tsinnijinnie as a witness. Defense counsel implied that Rena, the only other eyewit-

ness, had not been called as a witness because she would have exonerated her husband.

Under these circumstances the court's explanation of her absence was proper. A defendant can exercise the spousal privilege free from adverse comment, or even explanation. But this is not a license to suggest that the Government has sinister motives for not calling a witness without having any explanation given.

Tsinnijinnie next claims the trial judge erred in excluding an opinion of a purported expert witness. The admission of expert testimony is a matter within the broad discretion of the trial judge, *Salem v. United States,* 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); and the trial judge's ruling will not be disturbed unless it is "manifestly erroneous." *Reno-West Coast Distribution v. Mead Corp.,* No. 77-1029, slip op. 554 (9th Cir. filed February 21, 1979); *United States v. Navarro-Varelas,* 541 F.2d 1331 (9th Cir. 1976), *cert. denied,* 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977).

The excluded testimony would have pertained to whether the victim was standing up or lying down when she was hit by the truck. While it was certainly relevant to Tsinnijinnie's defense, the expert was attempting to offer an opinion based on an autopsy report even though he had no medical training. Hence the trial judge was well within his discretion in excluding the testimony.

Similarly, we reject Tsinnijinnie's argument that the trial judge failed to instruct the jury on his theory of the case. There is undoubtedly a right to such an instruction when it is supported by the law and the evidence. *United States v. Noah,* 475 F.2d 688 (9th Cir. 1973), *cert. denied,* 414 U.S. 821, 94 S.Ct. 119, 38 L.Ed.2d 54 (1973); *United States v. Nevitt,* 563 F.2d 406 (9th Cir. 1977). But there is no right to have the instruction phrased in the precise terms requested by defendant. The instructions given adequately embodied Tsinnijinnie's theory that the death of the victim was accidental.

Finally, there was no error in admitting evidence that three weeks before the death the victim and Tsinnijinnie had had a fight at a squaw dance. Rule 404(b), Fed.R. Evid., provides that evidence of other acts is admissible to show "motive, opportunity, intent . . . or absence of mistake or accident." Since the charge was second degree murder and the defense was that the killing was accidental, the evidence of the prior altercation was relevant and admissible as bearing on intent.

AFFIRMED.