**UNITED STATES of America**

v.

**Shaun L. JAMES, Defendant**

**No. 99–390PWG.**

United States District Court,
D. Maryland,
Southern Division.

Jan. 18, 2001.

Paul Marone, Special Assistant United States Attorney, for U.S.

Sasha Natapoff, Assistant Federal Public Defender, for Defendant.

### *MEMORANDUM AND ORDER*

GRIMM, United States Magistrate Judge.

The Defendant in this case has given written consent to trial of this case before me. 18 U.S.C. § 3401; Local Rule 301.3. Shaun L. James was charged with assault pursuant to 18 U.S.C. § 113, a Class B misdemeanor, after an altercation with his wife on Aberdeen Proving Ground, Maryland. During trial, the prosecution offered the testimony of police officer Okun as to incriminating statements made by Mr. James' wife to the officer. The Defendant objected at trial to these statements being considered by the Court in determining the innocence or guilt of Mr. James as they assertedly were (1) hearsay; (2) privileged; and (3) in violation of the Confrontation Clause of the Sixth Amendment. After a brief hearing, pursuant to FED. R. EVID. 104(a), the statements were held to

be excited utterances, FED. R. EVID. 803(2), and therefore, admissible hearsay. The Court, however, deferred ruling on the privilege and Confrontation Clause objections until counsel had the opportunity to brief the issues. Thus, the decision as to the innocence or guilt of Mr. James was postponed until a ruling could be made on whether or not the statements are admissible.

The matter now before the Court is the Defendant's Motion to Exclude Privileged Spousal Statements (hereinafter "Defendant's Motion"). For the reasons set forth below, the Defendant's Motion is **DENIED.**

### BACKGROUND

Shaun L. James was charged with assault, 18 U.S.C. § 113, a Class B misdemeanor, after an altercation with his wife on December 12, 1998, at Aberdeen Proving Ground, Maryland. A bench trial took place on August 19, 1999. The evidence at trial tended to show that on December 12, 1998, at approximately 9:45pm, the Defendant, his wife and their two children were driving in their car when Mr. and Mrs. James began to argue. (Tr. 41.) Mrs. James instructed Mr. James to pull the car over so she could get out. (Tr. 41.) Mr. James pulled the car over by Patio Pizza on Aberdeen Proving Ground, and Mrs. James got out with the two children. (Tr. 41.) She went over to the pay phone located outside Patio Pizza and dialed 911. (Tr. 42.) When the operator answered, Mrs. James hung up. (Tr. 42.) Shortly thereafter, police officer Okun responded to the 911 hangup call. (Tr. 5.) When the officer arrived he observed the Defendant, and his wife, in an argument. (Tr. 6.) He immediately separated them and asked Mr. James what had happened. (Tr. 7.) Mr. James told the officer that he and his wife had been in an argument and that he had pushed her.[1] (Tr. 7.) The officer testified that the Defendant was very upset

---

1. The Defendant testified to these facts on direct examination (Tr. 41–42).

and emotional at this time. (Tr. 7.) The officer then spoke with Mrs. James as to the events that occurred that evening. (Tr. 8, 26.)

At trial the Government offered the statements that Mrs. James voluntarily made to officer Okun at the time of the incident.[2] (Tr. 8, 26–27.) The Defense objected and stated that Mrs. James, who was not present at trial, would assert her spousal testimony privilege and in doing so any statements made by her to officer Okun were inadmissible. (Tr. 8—24.) Additionally, the Defense argued that the statements were hearsay and inadmissible on that ground as well. (Tr. 8.)

From the proffers made by both counsel, the Court found that there was sufficient information for it to rule under FED. R. EVID. 104(a), that if Mrs. James were present in court she would assert her spousal testimony privilege and would not testify against her husband. (Tr. 15–24.) The Court also ruled that the statements made by Mrs. James to officer Okun were excited utterances, FED. R. EVID. 803(2), thus an exception to the hearsay rule. (Tr. 34–36.) It was not decided during trial if these "excited utterances" by Mrs. James would be excluded under the spousal testimony privilege or the Confrontation Clause of the Sixth Amendment. (Tr. 49–51.)

## DISCUSSION

### A. Spousal Testimony Privilege

 The primary argument asserted by the Defendant is that the statements made by Mrs. James to officer Okun are inadmissible because they are covered by the spousal testimony privilege. (Defendant's Motion at 2.) Stated simply, Mr. James argues that the spousal testimony privilege applies not just to in-court-testimony by the witness-spouse, but prevents a third party from repeating an out-of-court statement made by that spouse. (Defendant's Motion at 2 .) While there are two types of spousal privilege, the spousal communication privilege and the spousal testimony privilege, this case involves only the spousal testimony privilege.[3]

 The spousal testimony privilege in federal court is governed by FED. R. EVID. 501, which states that the applicability of a privilege ". . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience . . ." The spousal testimony privilege is firmly rooted in common law. It was intended to promote family harmony by making the witness-spouse incompetent to testify against his or her spouse. *See Trammel v. United States*, 445 U.S. 40, 44, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). However, this rule has exceptions and has been and continues to be modified by the courts because of "reason and experience." *See Trammel*, 445 U.S. at 46, 100 S.Ct. 906; *Hawkins v. United States*, 358 U.S. 74, 79, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958).

The privilege began as one that absolutely disqualified a man from testifying in his own behalf since, as he had an interest in the outcome of the trial, he was seen as incompetent to testify. *See Hawkins*, 358 U.S. at 75, 79 S.Ct. 136. Since husband and wife then were regarded as one entity,

---

**2.** Mrs. James told officer Okun at the scene that the Defendant had hit her in the back of her head with his open hand and that she wanted to press charges against him. (Tr. 26–27.) However, when she later arrived at the police station she stated that she no longer wanted to press charges. (Tr. 26–27.)

**3.** The Defendant does not contend that these statements made by Mrs. James to the officer are inadmissible because of the spousal communication privilege. (Defendant's Motion at 2 n. 1.) That privilege is only applicable to confidential statements made between spouses. *See Wolfle v. United States*, 291 U.S. 7, 14–15, 54 S.Ct. 279, 78 L.Ed. 617 (1934); *United States v. Acker*, 52 F.3d 509, 514–515 (4th Cir.1995). Here, the statements were not made between spouses nor were they made in private as they were made by Mrs. James to the police officer.

that precluded the wife from testifying for or against her husband because she had the same interest. *Id.* However, there was an exception to this rule which allowed a wife to testify against her husband "where the husband commits an offense against the person of his wife." *Stein v. Bowman* 38 U.S. 209, 222, 13 Pet. 209, 10 L.Ed. 129 (1839); *see also Wyatt v. United States,* 362 U.S. 525, 526, 80 S.Ct. 901, 4 L.Ed.2d 931 (1960).

In 1878, Congress removed the "incompetent" label from a defendant and allowed him or her to testify in defending against a criminal charge. However, no provision was included to allow the wife to testify on her husband's behalf. In 1933, the Supreme Court, in *Funk v. U.S.,* 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933), eliminated total disqualification of the witness-spouse because it presented a "manifest incongruity" to permit a defendant to testify in his own behalf but refuse to allow his spouse to testify. *Id.* at 381, 54 S.Ct. 212. *Funk* did, however, keep intact the ability of either spouse to prevent the other from testifying against him or her. *Id.* at 373, 54 S.Ct. 212. This remained the state of the spousal testimony privilege until the United States Supreme Court revisited the issue in 1980. In *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), the high court held that the spousal testimony privilege belongs to the testifying spouse only and that he or she can testify against the defendant spouse if he or she chooses. *Id.* at 53, 100 S.Ct. 906. *Trammel* takes the spousal testimony privilege away from the defendant spouse, who no longer has control over his or her spouse's testimony. *Id.*

The stated purpose behind the spousal privileges is to keep family harmony and marital cohesion. *Id.* at 44, 100 S.Ct. 906.

The courts do not want to turn husband against wife and break down their marital relationship. However, the courts are cognizant that if the marriage already is damaged and the witness-spouse wants to testify against the defendant-spouse, the trust and confidence in the marital relationship already is gone, and there is nothing of substance left to protect. *Id.* at 52–53, 445 U.S. 40. The damaged relationship will not be repaired by allowing the defendant-spouse to exclude testimony from the witness-spouse, who wants to testify. Allowing testimony to be excluded when the marital relationship already is damaged would serve no purpose other than circumventing the truth-finding process. *Id.* That is why the Court in *Trammel* took the spousal testimony privilege away from the defendant-spouse and rested it solely in the testifying spouse. *See id.* "This modification—vesting the privilege in the witness-spouse—furthers the important public interest in marital harmony without unduly burdening legitimate law enforcement needs." *Id.* at 53, 100 S.Ct. 906.

The Court in *Trammel* further stated that no privilege "prevents the Government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension. It is only the spouse's testimony in the courtroom that is prohibited." *Id.* at 53 n. 12, 100 S.Ct. 906. It is this wording that guided decisions by two federal Circuit Courts of Appeal enabling them to permit the use of one spouse's statement against the other spouse when offered through a third person or a document. *See United States v. Archer,* 733 F.2d 354 (5th Cir.1984); *United States v. Chapman,* 866 F.2d 1326 (11th Cir.1989). Although neither this Court nor the Fourth Circuit[4] has spoken on this

---

4. The Defendant bases his argument on the Fourth Circuit's decision in *United States v. Hall,* 989 F.2d 711 (4Th Cir.1993). In that case, the defendant's wife allegedly told a prosecutor that she had seen her husband use cocaine, that she had gone with him on a drug deal, and she gave other information about her husband's drug use which she had learned of through conversations with her husband. *Id.* at 716. The prosecutor typed up the information in an "interview summary." *Id.* at 715. At trial, during the cross-examination of the defendant, the prosecutor told the jury that he had a copy of a statement

issue, five other circuits have, and their guidance is instructive.

The Second Circuit addressed this issues in *United States v. Mackiewicz*, 401 F.2d 219 (1968), *cert. denied*, 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 (1968). In *Mackiewicz*, the court held that a spouse's voluntary out-of-court statements can be testified to by a third party, where neither spouse consents to the statements being introduced. *Id.* at 225. The court allowed the statements to be repeated by a third party because it found that: the witness-spouse did not testify to the statements at trial so the marital relationship was not harmed; the statements were made by the witness-spouse voluntarily; and by testifying as to other matters the witness-spouse reduced the threat of prejudicial hearsay. *Id.* The court pointed out that "there is a convenient buffer of the third person actually making the remarks" and therefore "we are one step removed from actual testimony" of one spouse against the other. *Id.*

In *United States v. Doughty*, 460 F.2d 1360 (7th Cir.1972), the Seventh Circuit stated that it favored the view of the spousal testimony privilege as stated in *Mackiewicz*. *See id.* at 1364 n. 3, 460 F.2d 1360. In *Doughty*, the government sought to introduce an estate tax return filled out by the defendant's wife in a prosecution for evasion of estate taxes. *Id.* at 1363–64. The defendant sought to keep it out of evidence as violative of the spousal testimony privilege. *Id.* The court held the estate tax return was admissible and found that it did not amount to his spouse testifying against him. *Id.* at 1364.

In *United States v. Cleveland*, 477 F.2d 310 (7th Cir.1973), the police interviewed the defendant's wife as to the charges against her husband. *Id.* at 313. The defendant sought to suppress any statements or investigative leads procured from his wife because they would violate the spousal privilege. *Id.* While no government agent testified at trial as to any statements made by the witness-spouse, the court indicated that it would follow the rule stated by the Second Circuit, which provides that testimony by a government agent repeating statements made by one spouse against another is admissible. *Id.*

The Ninth Circuit also has held that the spousal testimony privilege does not bar a witness from repeating in court an excited utterance by a spouse.[5] In *Tsinnijinnie*, a witness testified at trial that right after the defendant's vehicle hit the victim he heard the wife (Ms. Tsinnijinnie) scream "He (Mr. Tsinnijinnie) ran over my mother." *See Tsinnijinnie*, 601 F.2d at 1037. The defendant argued that allowing that statement to be repeated in court violated the spousal testimony privilege. *Id.* The court disagreed and stated that any possible benefits from extending the marital testimony privilege to cover excited utterances heard by third parties "cannot justify excluding the evidence which is relevant and often highly probative." *Id.* at 1039. The court pointed out that in these circumstances the marital relationship will "proceed to its fate regardless of how the privilege is applied." *Id.* The court also stated that the spousal privilege will not be undermined by allowing such statements into evidence because they are still subject to the hearsay rule. *Id.*

by the defendant's wife in his hand. *Id.* at 715. The prosecutor then read to the jury from the statement under the pretext of cross-examination. *Id.* at 715–16. The Fourth Circuit held that the statement was inadmissible hearsay and as such potentially violated the Confrontation Clause. *Id.* at 716. The court further held that the use of the statement in that way violated the spousal testimony privilege. *Id. Hall* presents an entirely different

factual situation than the present case where there was no artifice employed by the Government in introducing the wife's voluntary statement to the third party witness. Thus, is not applicable.

5. *See United States v. Tsinnijinnie*, 601 F.2d 1035 (9th Cir.1979) *cert. denied*, 445 U.S. 966, 100 S.Ct. 1657, 64 L.Ed.2d 242 (1980).

A year later in *United States v. Lefkowitz*, 618 F.2d 1313 (9th Cir.1980), the court reaffirmed its holding in *Tsinnijinnie*. *See id.* at 1318–19. In *Lefkowitz*, the defendant's wife supplied information to the police that was used to secure a search warrant. *Id.* at 1318. The court held that the defendant's wife did not tesify against him and thus, the spousal testimony privilege was not applicable. *Id.* The court reiterated that the spousal testimony privilege "does not preclude the use of a wife's statements against a defendant husband at trial when they are testified to by a third person." *Id.*

Similarly the Fifth Circuit, in *United States v. Archer*, 733 F.2d 354 (5th Cir. 1984), abandoned its prior holdings that the spousal testimony privilege prohibits extrajudicial statements of one spouse being used against the other.[6] Two reasons were given for this departure. *See id.* at 358–60. First, the Fifth Circuit distinguished its previous decisions when it decided *United States v. Mendoza*, 574 F.2d 1373 (5th Cir.1978). In *Mendoza*, the court held that a tape recording of a statement made by the defendant's wife incriminating her husband was admissible at trial and did not violate the spousal testimony privilege because the wife was not "testifying" and she was a co-conspirator in the case. *Id.* at 1379. Second, the court interpreted the Supreme Courts' holding in *Trammel* to mean that a spouse's out-of-court statements are not covered by the spousal testimony privilege. *Archer*, 733 F.2d at 358. The court pointed to the language in *Trammel* which stated, "it is only the spouse's testimony in the courtroom that is prohibited." *Archer*, 733 F.2d at 358 (*citing Trammel*, 445 U.S. at 52 n. 12, 100 S.Ct. 906). The court held that any damage to the marital relationship would not be aggravated by the introduction of statements that were made before trial. *Archer*, 733 F.2d at 359. Therefore, the court concluded that, under *Trammel*, a statement made by one spouse against another could be introduced at trial either through a third party or a writing. *Id.*

The Eleventh Circuit also has spoken on this issue. In *United States v. Chapman*, 866 F.2d 1326 (11Th Cir.1989), the court stated that it was guided by the decision in *Trammel* and took notice of the warning given by the Court that the spousal testimony privilege must be narrowly interpreted as not to circumvent the truth-seeking process. *See id.* at 1333 (*citing Trammel* 445 U .S. at 50, 100 S.Ct. 906). In holding that out-of-court statements made by a spouse cannot be excluded based on the spousal testimony privilege, the court quoted language of the *Trammel* decision which stated that nothing in the law of privileges "prevents the Government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension. It is only the spouse's testimony in the courtroom that is prohibited." *Chapman*, 866 F.2d at 1333 (*quoting Trammel* 445 U.S. at 52, n. 12, 100 S.Ct. 906).

Additionally, no circuit court currently holds that the spousal testimony privilege can act as a bar prohibiting admission of out-of-court statements made by one spouse against the other.

 I find persuasive the foregoing logic and analysis from the circuits that have decided this issue. I agree that the spousal testimony privilege should not be extended to preclude the testimony of a third party concerning out-of-court statements made by the defendant's spouse where that testimony has sufficient indicia of reliability.

In this case, the Government charged that Mrs. James was assaulted by her

---

**6.** *See Ivey v. United States*, 344 F.2d 770, 772 (5th Cir.1965) (prohibiting customs agent from testifying to statements made by wife implicating husband in drug scheme); *United States v. Williams*, 447 F.2d 894, 897 (5th Cir.1971) (prohibiting police officer from testifying as to statements made by wife to the officer implicating her husband in counterfeiting scheme).

husband. She called 911 and later made voluntary statements to officer Okun concerning that assault. The possible benefits for invoking the spousal testimony privilege in this case [7] cannot justify excluding highly probative evidence, from the very victim of the assault. Therefore, the spousal testimony privilege is not violated by allowing testimony by the officer as to the wife's excited utterances.

## B. Confrontation Clause

■ The Defendant asserts that the admission of Mrs. James out-of-court statements through officer Okun violates the Confrontation Clause, U.S. Const. Amend. VI, because she asserted her spousal privilege and did not testify.[8] (Defendant's Motion at 4.) However, the Confrontation Clause does not exclude all statements made by a witness who is not present at trial. *Ohio v. Roberts*, 448 U.S. 56, 63–64, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The Confrontation Clause allows a witness' hearsay statements to be admitted at trial when it bears "adequate indicia of reliability." *See id.* at 66, 100 S.Ct. 2531. Reliability is assumed for statements which lie within a firmly rooted hearsay exception. *Id.* The United States Supreme Court has held that a statement determined to be an excited utterance [9] falls within a firmly rooted exception to the hearsay rule, and thus "satisfies the reliability requirement of the Confrontation Clause." *See White v. Illinois*, 502 U.S. 346, 356 n. 8, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992).

■ The Defendant states in his motion that "had Mrs. James declined to exercise her privilege and simply been 'unavailable' for some other reason, *see* FED. R. EVID. 804(a), the introduction of her statement would not offend the Confrontation Clause because it falls within a firmly established exception to the hearsay rule." (Defendant's Motion at 4.) The Defendant's contention is incorrect. By asserting her spousal testimony privilege, Mrs. James is "unavailable" as a witness. *See* FED. R. EVID. 804(a)(1). Further, none of the hearsay exceptions listed in FED. R. EVID. 804(b) would apply to Mrs. James' statement to officer Okun. Her statement is not: prior testimony (804(b)(1)); a dying declaration (804(b)(2)); a statement against her interest (804(b)(3)); a statement regarding her personal or family history (804(b)(4)); nor is there any evidence that she was unavailable to testify as a result of any improper conduct by Mr. James (804(b)(6)). Thus, Rule 804 is unavailable in this case.

■ Moreover, the United States Supreme Court has held that the Confrontation Clause does not require a witness to be found "unavailable" before testimony can be admitted under the excited utterance exception to the hearsay rule. *See White*, 502 U.S. at 354–357, 112 S.Ct. 736. Once the court determines that an out-of-court statement qualifies as an excited utterance, the Confrontation Clause has been satisfied, and the out-of-court statements can be admitted. *Id.* at 356–57, 112 S.Ct. 736. The Supreme Court clarified that excited utterances [10] have substantial guarantees of truthfulness that cannot be

---

7. When a marital relationship is such that one spouse physically assaults the other and the victim spouse calls 911 and makes voluntary statements to a police officer within minutes of the offense having taken place, the relationship will be damaged whether or not the police officer repeats those statements in court.

8. The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him." U.S. Const. Amend. VI.

9. In *White*, the court referenced the spontaneous declaration exception to the hearsay rule, which is now known as the excited utterance exception to the hearsay rule. *White*, 502 U.S. at 356 n. 8, 112 S.Ct. 736.

10. Again, the Court in *White*, referenced the spontaneous declaration exception, which is now known as the excited utterance exception to the hearsay rule. *White*, 502 U.S. at 356 n. 8, 112 S.Ct. 736.

"duplicated simply by the declarant later testifying in court. To exclude such probative statements under the strictures of the Confrontation Clause would be the height of wrongheadedness, given that the Confrontation Clause has as a basic purpose the promotion of the 'integrity of the fact finding process.'" *Id.* at 356–57, 112 S.Ct. 736 (*citing Coy v. Iowa,* 487 U.S. 1012, 1020, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988)). Therefore, the statements of Mrs. James that were introduced through the testimony of police officer Okun, were admissible as excited utterances, FED. R. EVID. 803(2), a firmly rooted exception to the hearsay rule.[11]

Further, the statements testified to by officer Okun have sufficient guarantees of trustworthiness [12] to substitute for cross-examination and thus, their admission does not violate the Confrontation Clause. *See United States v. Brothers Constr. Co. of Ohio,* 219 F.3d 300, 309 (4th Cir.2000); *Austin v. Smith,* 914 F.Supp. 1245, 1247 (D.Md.1996).

### Conclusion

For the reasons stated above, the statements made by Mrs. James to officer Okun are admissible through the officer's testimony because they are excited utterances and they do not violate the spousal testimony privilege or the Confrontation Clause. Thus, the Defendant's Motion is DENIED. Counsel will contact the Court within Ten days of this order to schedule further proceedings in this case.

---

11. Further, the statements offered through officer Okun have additional indicia of reliability as they were corroborated by the testimony of the Defendant at trial. (Tr. 7.) On direct examination, the Defendant testified that he and his wife were in an argument when she told him to pull the car over so she could get out. (Tr. 41.) He testified that she got out of the car with their children and dialed 911. He stated that after his wife hung up the phone he approached her and she "was fussing" so he pushed her hand. (Tr. 42.)

12. Further, the Supreme Court has said that "a statement that has been offered in a moment of excitement—without the opportunity to reflect on the consequences of one's exclamation—may justifiably carry more weight with the trier of fact than a similar statement offered in the relative calm of a courtroom." *White,* 502 U.S. at 356, 112 S.Ct. 736.