UNITED STATES of America

v.

Shaun L. JAMES

No. CR. AMD 01–0345.

United States District Court,
D. Maryland.

Oct. 12, 2001.

Paul A. Marone, Special Assistant U.S. Attorney, Office of Chief Counsel/SJA, Aberdeen Proving Ground, MD, for Plaintiff.

Alexander Sasha Natapoff, Federal Public Defender, Baltimore, MD, for Defendant.

## MEMORANDUM

DAVIS, District Judge.

This is an appeal from a judgment of conviction and sentence imposed by a United States Magistrate Judge. This court has jurisdiction pursuant to 18 U.S.C. § 3402, Fed.R.Crim.P. 58(g)(2) and D.Md.R. 302(1). The issues are fully briefed and no hearing is needed. For the reasons set forth herein, I shall affirm the judgment.

### I. Introduction

On December 12, 1998, appellant Shaun L. James (appellant or James) was arrested and charged pursuant to 18 U.S.C. § 113(a)(4)[1] with assaulting his wife on a federal enclave, *viz.*, Aberdeen Proving Ground, Maryland. The case came on for trial without a jury on August 19, 1999, before the Honorable Paul W. Grimm, United States Magistrate Judge. During the trial, the Government offered testimony of the arresting officer, Kevin Okun (officer Okun), regarding statements made by James's wife to the officer. The appellant objected on the grounds that the statements were inadmissible as (1) hearsay; (2) privileged; and (3) offered in violation of the Confrontation Clause of the Sixth Amendment.[2] Magistrate Judge Grimm ultimately rejected all of these contentions, *see United States v. James*, 128 F.Supp.2d 291 (D.Md.2001), found James

guilty, and sentenced James to imprisonment for a period of 30 days (fifteen weekends), followed by a three year period of supervised release. James raises three issues on appeal. He contends that: (1) the Magistrate Judge erroneously admitted Mrs. James's statements to officer Okun; (2) even if Mrs. James's statements were properly admitted, the verdict was not supported by sufficient evidence; and (3) the court deprived James of due process in that the Magistrate Judge lacked an independent recollection of the facts of the case at the time he rendered his verdict, which was announced after a prolonged delay of nearly two years after the evidence was taken, and that the Magistrate Judge substituted his own personal, extra-judicial assessment of the government's witness in reaching the verdict. As explained herein, each of these contentions lacks merit.

### II. The Proceedings Below

#### A. The Testimony at Trial

On December 12, 1998, officer Okun responded to a 911 hangup from the payphone located at Patio Pizza on Rareton Avenue within Aberdeen Proving Ground, Maryland. When he arrived at that location, he witnessed a man, a woman and two children, later identified as James, his wife and their two children. According to officer Okun, it appeared that they were in the midst of an argument; James appeared to be quite upset. Officer Okun testified that he separated James and his wife and questioned James about the argument. According to officer Okun, James

---

**1.** Section 113(a)(4) states: "Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows: ... (4) Assault by striking, beating, or wounding, by a fine under this title or imprisonment for not more than six months or both." 18 U.S.C. § 113(a)(4).

**2.** The Confrontation Clause of the Sixth Amendment states that, "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. AMEND. VI.

stated that he was in a "verbal altercation" with his wife "and that he had pushed her." Tr. at 7 (Transcript of Hearing, August 19, 1999) (hereinafter Tr. I).

Officer Okun stated that about five minutes after he arrived at the scene, he spoke to Mrs. James. He testified that Mrs. James appeared to be "very emotional and angry and upset." Tr. I at 25. Officer Okun noticed that her speech was very fast and broken and that her body was trembling. He testified that she told him that while she and her husband were in their vehicle and proceeding on Rareton Avenue, they became embroiled in an argument, "which led her to have James stop the car, and she then got out of the car and ... began to walk." Tr. I at 26. Mrs. James told him that James pulled the car over to where she was standing, got out of the car, continued their argument and hit her on the back of her head with his open hand. Mrs. James stated to officer Okun that she wanted to press charges against James. Consequently, officer Okun arrested James. About 15 to 20 minutes later, at the Aberdeen Proving Ground Police Station, Mrs. James refused to provide officer Okun with a sworn statement. She wished not to press charges against her husband.

James waived his right to decline to testify and took the stand in his defense. He stated that he and his wife were having an argument in their car. Mrs. James then got out of the car and walked over to a payphone. According to James, he then pulled the car up next to the payphone and got out of the car. James testified that he believed that before he pulled the car up to the payphone, Mrs. James had called 911 and then hung up the phone. James explained what happened next as follows: "My wife was fussing. She was pointing her hand in my face, and we was fussing and fussing and fussing, and I pushed the hand out of my face. We had zero arguments—when the police got there, we had zero argument [sic], not one word...." James specifically denied hitting his wife on the back of her head with an open hand.

### B. Procedural History

At trial, as set forth above, the Government offered evidence of certain statements that Mrs. James voluntarily made to officer Okun at the time of the incident (i.e., Mrs. James told officer Okun during his interview of her at the scene that James had hit her on the back of the head and that she wanted to press charges). Defense counsel objected to these statements. Counsel asserted that if she were called to testify, Mrs. James (who was not present at the trial) would invoke her spousal testimony privilege; accordingly, counsel argued, any statements made by her to officer Okun were inadmissible.

The Magistrate Judge made certain preliminary determinations. First, he concluded that Mrs. James would indeed invoke the spousal testimony privilege were she to be called as a witness. Second, pursuant to Federal Rule of Evidence 104(a) [3], he concluded that the Government had established that the statements made by Mrs. James to officer Okun qualified as "excited utterances" under Federal Rule of Evidence 803(2),[4] and thus were admissible

---

**3.** Federal Rule of Evidence 104(a) regarding questions of admissibility states:

Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.
Fed.R.Evid. 104(a) (2001).

**4.** Federal Rule of Evidence 803(2) addressing hearsay exceptions when the availability of the declarant is immaterial states:

(despite their hearsay character) in the absence of some other ground of exclusion. As to the spousal privilege and Confrontation Clause issues, the Magistrate Judge required the parties to file legal memoranda; thus, he held those issues open for later determination.

Subsequently, in a published opinion, the Magistrate Judge concluded, relying on the common law purpose of the spousal testimony privilege and the decisions of various circuit courts of appeals,[5] that the "spousal testimony privilege should not be extended to preclude the testimony of a third party concerning out-of-court statements made by the defendant's spouse where that testimony has sufficient indicia of reliability." *James*, 128 F.Supp.2d at 295–97. The court concluded, therefore, that the spousal testimony privilege was not violated by permitting the testimony of officer Okun as to Mrs. James's excited utterances. *Id.* at 296–97.

The Magistrate Judge then addressed the Sixth Amendment Confrontation Clause issue. The court first noted that the Confrontation Clause does not require exclusion of all statements made by witnesses who are not present, but rather permits hearsay statements to be admitted at trial when the statement has "adequate indicia of reliability." *Id.* at 297 (internal quotation marks omitted) (quoting *Ohio v.*

*Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). The court explained that because of the "substantial guarantees of truthfulness" inherent in excited utterances, "[o]nce the court determines that an out-of-court statement qualifies as an excited utterance, the Confrontation Clause has been satisfied, and the out-of-court statements can be admitted." *Id.* (citing *White v. Illinois*, 502 U.S. 346, 356–57, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)). The court held that "the statements testified to by officer Okun have sufficient guarantees of trustworthiness to substitute for cross-examination and thus, their admission does not violate the Confrontation Clause." *Id.* at 298 (citing *United States v. Brothers Construction Co. of Ohio*, 219 F.3d 300, 309 (4th Cir.2000); *Austin v. Smith*, 914 F.Supp. 1245, 1247 (D.Md.1996), *dismissed without op.*, 114 F.3d 1175 (4th Cir.1997)).

On April 26, 2001, upon the resumption of the proceedings, the Magistrate Judge found James guilty of assault. On June 21, 2001, upon the completion of a presentence investigation report, the Magistrate Judge sentenced James to imprisonment for 30 days (15 weekends), followed by a period of supervised release for three years with certain conditions. On June 27, 2001, James filed his timely Notice of Appeal.

---

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(2) **Excited utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Fed.R.Evid. 803(2) (2001).

5. *See United States v. Mackiewicz*, 401 F.2d 219 (2nd Cir.), *cert. denied*, 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 (1968); *United States v. Doughty*, 460 F.2d 1360 (7th Cir. 1972); *United States v. Cleveland*, 477 F.2d 310 (7th Cir.1973); *United States v. Tsinnijinnie*, 601 F.2d 1035 (9th Cir.1979), *cert. denied*,

445 U.S. 966, 100 S.Ct. 1657, 64 L.Ed.2d 242 (1980); *United States v. Lefkowitz*, 618 F.2d 1313 (9th Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980); *United States v. Archer*, 733 F.2d 354 (5th Cir.), *cert. denied*, 469 U.S. 861, 105 S.Ct. 196, 83 L.Ed.2d 128 (1984); *United States v. Chapman*, 866 F.2d 1326 (11th Cir.), *reh'g denied*, 874 F.2d 821 (11th Cir.1989) (en banc). The court also noted that no circuit court "currently holds that the spousal testimony privilege can act as a bar prohibiting admission of out-of-court statements made by one spouse against another." *United States v. James*, 128 F.Supp.2d 291, 294–97 (D.Md.2001).

## III. Standard of Review

■ The standard of review on appeal from a conviction entered by a Magistrate Judge is that the conclusions of law "are subject to de novo review, while his findings of fact are reviewed only for clear error, just as would be the case were the matter on appeal from a District Court bench trial to a Court of Appeals." *United States v. Orme*, 851 F.Supp. 708, 709 (D.Md.1994), *aff'd without op.*, 51 F.3d 269 (4th Cir.1995). Clear error "is more than a difference of opinion between the original fact-finder and the appellate reviewer; to be clearly erroneous, a finding must leave the reviewer with a 'definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

## IV. Analysis

### A. Spousal Testimony Privilege

■ James argues that the Magistrate Judge, in rejecting allegedly controlling precedent in the Fourth Circuit and applying the law of other circuits, erroneously concluded that the privilege against adverse spousal testimony does not cover out-of-court statements like that of Mrs. James. I disagree. The court correctly determined that the Fourth Circuit has not addressed directly this issue, *James*, 128 F.Supp.2d at 294 n. 4, and that extant decisions of other circuits have dealt with this question correctly. *Id.* at 294–95.

Federal Rule of Evidence 501 provides that a privilege of a witness is governed by "principles of the common law." [6] As the Magistrate Judge aptly stated, the spousal testimony privilege is "firmly rooted in common law." *Id.* at 293. Originally, the privilege forbid a wife to testify for or against her husband.[7] *Trammel v. United States*, 445 U.S. 40, 43–44, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (citing 1 E. Coke, *A Commentarie upon Littleton* 6b (1628)). The privilege was based on the rule that the accused was not permitted to testify in his own defense because of his interest in the proceedings and on the concept that a wife and a husband were considered one. *Id.* at 44, 100 S.Ct. 906.

In *Funk v. United States*, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933), long after Congress permitted a defendant to testify in her or his defense, *James*, 128 F.Supp.2d at 294, the Supreme Court eliminated the preclusion of the witness-spouse from testifying, reasoning that "a refusal to permit the wife upon the ground of interest to testify in behalf of her husband, while permitting him, who has the greatest interest, to testify for himself, presents a manifest incongruity." *Funk*, 290 U.S. at 381, 54 S.Ct. 212. "*Funk*, however, left undisturbed the rule that either spouse could prevent the other from giving adverse testimony." *Trammel*, 445 U.S. at 44, 100 S.Ct. 906. It was at this point that the rule became a privilege rather than "an absolute disqualification." *Id.* (citing

---

**6.** Federal Rule of Evidence 501 states in part: Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.

Fed.R.Evid. 501 (2001).

**7.** There was an exception to this rule allowing a wife to testify against her husband "where the husband commits an offense against the person of his wife." *Stein v. Bowman* 38 U.S. 209, 222, 13 Pet. 209, 10 L.Ed. 129 (1839); *see Wyatt v. United States*, 362 U.S. 525, 526, 80 S.Ct. 901, 4 L.Ed.2d 931 (1960).

J. Maguire, *Evidence, Common Sense and Common Law* 78–92 (1947)).

In *Trammel*, the Court vested the privilege in the witness-spouse. *Id.* at 53, 100 S.Ct. 906. Therefore, "the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." *Id.* This modification of the privilege was intended to promote the modern purpose of the spousal testimony privilege, which is its "role in fostering the harmony and sanctity of the marriage relationship." *Id* at 45, 53, 100 S.Ct. 906. The Magistrate Judge expounded:

> The courts do not want to turn husband against wife and break down their marital relationship. However, the courts are cognizant that if the marriage already is damaged and the witness-spouse wants to testify against the defendant-spouse, the trust and confidence in the marital relationship already is gone, and there is nothing of substance left to protect.... The damaged relationship will not be repaired by allowing the defendant-spouse to exclude testimony from the witness-spouse, who wants to testify. Allowing testimony to be excluded when the marital relationship already is damaged would serve no purpose other than circumventing the truth-finding process.... That is why the Court in *Trammel* took the spousal testimony privilege away from the defendant-spouse and rested it solely in the testifying spouse.

*James,* 128 F.Supp.2d at 294 (citations omitted). Further, the Court in *Trammel* stated that no privilege "prevents the Government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension. It is only the spouse's testimony in the courtroom that is prohibited." *Trammel,* 445 U.S. at 53 n. 12, 100 S.Ct. 906.

James argues that *United States v. Hall,* 989 F.2d 711 (4th Cir.1993), applies to the present case and stands for the general proposition that the spousal testimony privilege "extends to a spouse's prior out-of-court statements once the declarant spouse invokes his or her right to testify." Appeal Memo at 3. The Magistrate Judge determined that *Hall* was inapplicable to the present case because *Hall* "presents an entirely different factual situation than the present case where there was no artifice employed by the Government in introducing the wife's voluntary statement to the third party witness." *James,* 128 F.Supp.2d at 294 n. 4. Manifestly, the Magistrate Judge correctly reasoned that *Hall* is plainly distinguishable from, and is not controlling as to, the circumstances presented in the case at bar.

In *Hall,* the defendant was convicted of conspiracy to distribute cocaine and distribution of cocaine. *Hall,* 989 F.2d at 713. The Fourth Circuit determined that the defendant had been improperly cross-examined and thus reversed his convictions and remanded for a new trial. *Id.* The defendant's wife allegedly "provided inculpatory information to the government" after the defendant's arrest that would have "devastated" the defendant's case had she testified against the defendant, *id.* at 713, 715; however, she declined to testify. According to an "Interview Summary" of her statements, the defendant's wife had witnessed the defendant using cocaine, found cocaine inside her house and car and had been told by the defendant that he used drugs and thought he would be indicted. *Id.* at 715. Before the defendant's trial, his wife signed an affidavit stating that she would assert her marital privilege against being compelled to testify against her husband. *Id.* at 713. During the cross-examination of the defendant at trial, "the prosecutor stated that he possessed a

statement made by [the defendant's wife]," and then the prosecutor "held the 'statement' in his hand and read portions of it during the cross-examination."[8] *Id.* The Fourth Circuit determined:

> There were numerous deficiencies with this cross-examination. We do not know, short of accepting [the prosecutor's] word on this matter, whether [the defendant's wife] was ever interviewed. Even if a statement was given or whether the summary of it was materially accurate. This summary is not signed or otherwise adopted by [the defendant's wife]. It was *inadmissible as hearsay* thus violating Fed.R.Evid. 802, and perhaps, the Confrontation Clause as well, since [the defendant] had no opportunity for cross-examination. . . .

*Hall,* 989 F.2d at 716 (citation omitted) (emphasis added).

The court also concluded that both the defendant's and the defendant's wife's marital privilege had been violated by the prosecutor's actions on cross-examination of the defendant, as the defendant's wife had asserted her privilege not to testify and the prosecutor had divulged privileged marital communications. *Id.* The Fourth Circuit elaborated that "[p]rotections against the use of privileged and inadmissible evidence would be of little benefit if the prosecutor were allowed, under the guise of 'artful-cross-examination,' to tell the jury the substance of inadmissible evidence. *Id.* (citing *Goldsmith v. Witkowski,* 981 F.2d 697 (4th Cir.1992), *cert. denied,* 509 U.S. 913, 113 S.Ct. 3020, 125 L.Ed.2d 709 (1993)); *United States v. Check,* 582 F.2d 668, 683 (2d Cir.1978). The court held:

> This case presents an egregious example of "artful" cross-examination. [The prosecutor] repeatedly told the jury that he possessed a statement given by the defendant's wife. He then proceeded to read the statement to the jury under the guise of cross-examining [the defendant]. In effect, the government gained extremely damaging inculpatory testimony that could not have been introduced into evidence. The government's use of [the defendant's wife's] unauthenticated statement violated Fed.R.Evid. Rule 802 . . . both defendant's and his wife's spousal privileges, and introduced testimony of a witness who could not be cross-examined as required by the Confrontation Clause.

*Id.* at 716–17.

The present case lacks the essential elements of *Hall* that led to the Fourth Circuit's decision. First, the Fourth Circuit in *Hall* determined that the contents of the

---

8. During the prosecutor's cross-examination of the defendant, the prosecutor inquired into the statements of the defendant's wife. For instance, the following exchange took place in front of the jury as the prosecutor read from the defendant's wife's alleged statement:

Q: [Defendant], isn't it true that your wife caught you using cocaine as early as 1987?
A: No she didn't.
Q: In the kitchen, didn't she?
Q: She caught you using cocaine on the kitchen table, and you kicked her out of the house?

*United States v. Hall,* 989 F.2d 711, 715 (1993) (second alteration in original). The prosecutor also asked:

Q: In fact, isn't it also true, [defendant], that you even brought your wife with you for a cocaine deal[?]
Q: In fact, after Debbie Greer got busted, you were so concerned about that and what Debbie Greer was going to say about her relationship with you that you shared that concern and concerns with your wife . . .?

*Id.* (second and third alteration in original). The prosecutor then stated the following to the defendant: "[Defendant] let me show you what's marked as Government's Exhibit 16, . . . This is a summary of an interview with [your wife] and ask if you'd read over that, please." *Id.* (second alteration in original).

"Interview Summary" constituted inadmissible hearsay. *Id.* at 716. In the present case, the Magistrate Judge determined that the statements made by James's wife to officer Okun were excited utterances and thus admissible as an exception to the hearsay rule. *James,* 128 F.Supp.2d at 293. James does not challenge the Magistrate Judge's conclusion that the statements made by his wife qualify as excited utterances. In addition, in *Hall,* the statements related to the jury constituted an improper exposure of the jury to privileged and inadmissible evidence through "artful cross-examination." *Hall,* 989 F.2d at 716–17. In the present case, there was no jury and the statements were not introduced by the prosecutor during the cross-examination of the defendant in a transparent attempt to expose the factfinder to inadmissible evidence. *See James,* 128 F.Supp.2d at 294 n. 4 (The Magistrate Judge accurately noting that *Hall* presents "an entirely different factual situation than the present case where there was no artifice employed by the Government in introducing the wife's voluntary statement to the third party witness."). These circumstances entirely distinguish *Hall.*

James attempts to broaden the *Hall* reasoning to apply to the present circumstances by stating that "Judge Weinstein interprets the spousal privilege to exclude 'all testimony' and cites *Hall* for the proposition that 'all testimony' includes a spouses's out-of-court 'statement.'" Appeal Memo at 4 (citing WEINSTEIN'S FEDERAL EVIDENCE § 505.05[1] & n. 1 (2d ed.1999)).[9] What the cited treatise actually presents, however, is the proposition that the spousal testimony privilege "will exclude all testimony, not just confidential communications" and cites the *Hall* decision in support as holding that it is "reversible error to permit cross-examination of [a] defendant concerning [a] 'statement' made by [a] spouse [who] indicated [that] she would assert marital privilege if called to testify.". WEINSTEIN'S FEDERAL EVIDENCE § 505.05[1] & n. 1. Again, those circumstances do not exist in the present case.

More instructive, as the Magistrate Judge noted, are the decisions of the five circuits that have decided cases with facts similar to this one and have concluded that the spousal testimony privilege was inapplicable. *See James,* 128 F.Supp.2d at 295–97; *supra* note 5. The Second Circuit, in *United States v. Mackiewicz,* 401 F.2d 219 (2d Cir.1968), *cert. denied,* 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 (1968), was presented with the question of whether a "husband's voluntary out-of-court statements, made when acting as agent for his wife, [can] be repeated by a third person and used against his wife at a joint trial in which neither spouse consents to their use." *Id.* at 225–26. The court responded in the affirmative. *Id.* The Second Circuit approved this departure from the privilege, in part, because the statements were not testified to by the husband

9. James also argues that "courts and writers believe that under the common law, '[h]earsay statements—oral or documentary—are testimonial utterances [and thus] are equally privileged with testimony on the stand.'" Appeal Memo at 4 (alterations in original) (quoting 25 WRIGHT & GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5576, at 589–92 (1989)). What James overlooks is that an excited utterance qualifies as an exception to the hearsay rule. Also, the same treatise explains that there is an ongoing split among courts as to whether hearsay is covered by the privilege. 25 WRIGHT & GRAHAM, FEDERAL PRACTICE AND PROCEDURE· EVIDENCE § 5576. Further, the correct rule in the present case is that the privilege "does not bar admission of out-of-court statements made by the spouse in writing or to a third person." 2A WRIGHT & GRAHAM, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 405, at 38 (3d ed.2000).

at trial and thus domestic peace was not jeopardized. *Id.* at 225. The second reason is that the husband made the statements voluntarily when the husband was an implied agent for his wife. *Id.* The Second Circuit reasoned as follows:

> [W]e are one step removed from actual testimony. Therefore, there is no chance that we might be repulsed by a spouse actually testifying against his mate.... Nor is there a chance that marital frictions will be aggravated ..., for there is the convenient buffer of the third person actually making the remarks.

*Id.* (citations omitted). Additionally, the court explained that the statements were not hearsay because they were covered by a standard exception to the hearsay rule, "likelihood of an illicit association." *Id.* at 226.

The Seventh Circuit expressly approved the *Mackiewicz* decision. *See United States v. Doughty*, 460 F.2d 1360, 1364 (7th Cir.1972). In *Doughty*, the court concluded that, in light of *Mackiewicz*, the admission of an estate tax form filled out by the defendant's wife in a prosecution for estate tax evasion did not violate the spousal testimony privilege. *Id.* The approval of the view espoused in *Mackiewicz* was reiterated in *United States v. Cleveland*, 477 F.2d 310, 313 (7th Cir.1973), which stated that testimony by a government agent as to what a spouse said is admissible.

In *United States v. Tsinnijinnie*, 601 F.2d 1035, 1037 (9th Cir.1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1657, 64 L.Ed.2d 242 (1980), the Ninth Circuit addressed a case in which the defendant invoked the "anti marital facts privilege" to prohibit his wife from testifying against him, but a witness testified that he heard the defendant's wife exclaim, when the defendant ran over the victim: "He (Tsinnijinnie) ran over my mother." The court

explained that this statement fell into the excited utterance category of hearsay exceptions. *Id.* The court determined, relying on various treatises and on *Mackiewicz*, that "the marital privilege should not be extended to bar a witness from relating an excited utterance by a spouse." *Id.* at 1039. The court reasoned:

> The possible benefits that would derive from such an extension cannot justify excluding the evidence which is relevant and often highly probative. Experience demonstrates that the potential benefits of the marital privilege are often more imaginary than real; when a marriage has deteriorated to the point where one spouse makes statements damaging to the other, that marriage will usually proceed to its fate regardless of how the spousal privilege is applied.

*Id.* The Ninth Circuit reaffirmed this position in *United States v. Lefkowitz*, 618 F.2d 1313, 1318 (9th Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980). The court stated that the spousal testimony privilege did not apply to the situation in which the defendant's wife did not testify against the defendant, "but provided information used to support the issuance of a search warrant" and because the privilege is inapplicable as it does not preclude "the use of a wife's statements against a defendant husband at trial when they are testified to by a third person." *Id.* (citing *United States v. Mendoza*, 574 F.2d 1373, 1379 (5th Cir.), *cert. denied*, 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978)).

The Fifth Circuit in *United States v. Archer*, 733 F.2d 354, 358 (5th Cir.), *cert. denied*, 469 U.S. 861, 105 S.Ct. 196, 83 L.Ed.2d 128 (1984), held that the adverse spousal testimony privilege is not violated by permitting extrajudicial statements of one spouse being used against the other. The court made this determination, in

part, based on the Supreme Court's decision in *Trammel, supra.* The Fifth Circuit stated:

> [T]he Supreme Court's decision in *Trammel* to vest the adverse spousal testimony privilege in the witness-spouse suggests that the spouse's out-of-court statements are not within in the privilege: 'Neither *Hawkins,* nor any other privilege, prevents the Government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension. It is only the spouse's testimony in the courtroom that is prohibited.'

*Id.* (quoting *Trammel,* 445 U.S. at 52 n. 12, 100 S.Ct. 906). As the statement is made before trial, the court reasoned, marital harmony would be "enhanced minimally if at all, therefore, by excluding the statement when offered after the fact through a third-party witness at trial, and 'the normally predominant principle of utilizing all rational means for ascertaining the truth' would be unnecessarily frustrated." *Id.* (quoting *Trammel,* 445 U.S. at 50, 100 S.Ct. 906).

Finally, the Eleventh Circuit reached the same conclusion, employing the same reasoning as the Fifth Circuit did in *Archer, supra.* In *United States v. Chapman,* 866 F.2d 1326 (11th Cir.), *reh'g denied,* 874 F.2d 821 (11th Cir.1989) (en banc), the Eleventh Circuit was persuaded by *Trammel's* statement "that nothing in the law of privileges 'prevents the Government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension. It is only the spouse's testimony in the courtroom that is prohibited.'" *Chapman,* 866 F.2d at 1333 (quoting *Trammel,* 445 U.S. at 52 n. 12, 100 S.Ct. 906). The court also noted the importance of the Supreme Court's warnings that testimonial privileges should be construed narrowly as this category of privi-

leges "obstruct[s] the search for truth." *Id.* (citing *Trammel,* 445 U.S. at 50, 100 S.Ct. 906; *United States v. Nixon,* 418 U.S. 683, 709–10, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)). The court concluded by adopting the view of the Fifth Circuit and of other circuit courts that out-of-court statements are not excludable on the basis of spousal testimony privilege. *Id.* (citing *Archer,* 733 F.2d at 359).

In the case at bar, the Magistrate Judge correctly drew upon the wealth of persuasive authority set forth here in concluding that officer Okun's testimony was not inadmissible on the basis of spousal testimony privilege.

**B. Confrontation Clause**

■ James argues that the admission of his wife's statements violated the Confrontation Clause of the Sixth Amendment, *supra* note 2. Appeal Memo at 5. The Magistrate Judge explained that the Confrontation Clause was not violated as the statements were excited utterances, and the Supreme Court "has held that a statement determined to be an excited utterance falls within a firmly rooted exception to the hearsay rule," satisfying "the reliability requirement of the Confrontation Clause." *James,* 128 F.Supp.2d at 297 (internal quotation marks omitted) (quoting *White,* 502 U.S. at 356 n. 8, 112 S.Ct. 736). James concedes that excited utterances satisfy the reliability requirement of the Confrontation Clause and instead seems to argue that although the statements were excited utterances, their particular harmfulness under the circumstances in this case compels their exclusion nonetheless. Appeal Memo at 5. This argument is unfounded.

The Confrontation Clause of the Sixth Amendment, if read literally, would, on objection, warrant the exclusion of any statement of a declarant who was not pres-

ent at trial. *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (citing *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409 (1895)). Reading the Clause in such a manner would result in the abrogation of virtually all of the hearsay exceptions; a result that has long been rejected. *Id.* However, the Confrontation Clause does foresee the exclusion of "some hearsay" statements as the Clause favors face-to-face confrontation at trial, and "a primary interest secured by [the provision] is the right of cross-examination." *Id.* at 64 (internal quotation marks omitted) (alteration in original) (quoting *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)) (citing *California v. Green,* 399 U.S. 149, 156–57, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)).

The "usual case" requires that the prosecution produce or demonstrate the unavailability of "the declarant whose statement it wishes us to use against the defendant." *Id.* at 65, 100 S.Ct. 2531 (citations omitted). However, unavailability does not always have to be demonstrated. *Id.* The Confrontation Clause permits hearsay statements to be admitted at trial when they have "indicia of reliability." *Id.* at 65–66, 100 S.Ct. 2531 (quoting *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972)).

The Court has applied this "indicia of reliability" requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations

that admission of virtually any evidence within them comports with the "substance of the constitutional protection." ... This reflects the truism that "hearsay rules and the Confrontation Clause are generally designed to protect similar values" ... and "stem from the same roots." ... It also responds to the need for certainty in the workday world of conducting criminal trials.

*Id.* at 66, 100 S.Ct. 2531 (citations omitted) (footnote omitted).

Thus, "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* More specifically, in *White v. Illinois,* 502 U.S. 346, 356 n. 8, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), the Supreme Court explained that the excited utterance hearsay exception qualifies as "firmly rooted," and thus its reliability is inferred, satisfying the reliability requirement of the Confrontation Clause.[10] Demonstrating the unavailability of the declarant as to excited utterances is unnecessary given "the evidentiary value of such statements, their reliability, and that establishing a generally applicable unavailability rule would have few practical benefits while imposing pointless litigation costs." *Id* at 357, 112 S.Ct. 736.

In short, the admission of excited utterances does not violate the Confrontation Clause. This principle disposes of James's claim in the present case. James has not presented a persuasive argument to demonstrate why the excited utterances admit-

---

10. The Supreme Court expounded:

We note first that the evidentiary rationale for permitting hearsay testimony regarding [excited utterances] ... is that such out-of-court declarations are made in contexts that provide substantial guarantees of their trustworthiness. But those same factors that contribute to the statements' reliability cannot be recaptured even by later in-court testimony. A statement that has been of-

fered in a moment of excitement—without the opportunity to reflect on the consequences of one's exclamation—may justifiably carry more weight with a trier of fact than a similar statement offered in the relative calm of the courtroom.

*White v. Illinois,* 502 U.S. 346, 355–56, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (footnote omitted).

ted in this case are in any way different, requiring more inspection and caution regarding their admission, than the excited utterances contemplated by the Supreme Court in *White*. Fitting within a "firmly rooted" exception to the hearsay rule that carries sufficient indicia of reliability, Mrs. James's statements to officer Okun do no run afoul of the Confrontation Clause.

■ James's argument for exclusion seems to rely on the "crucial" quality of the statements to the Government's ability to prove guilt beyond a reasonable doubt and, concomitantly, their "devastating" quality in respect to James's defense. Appeal Memo at 6 (citing *Dutton v. Evans*, 400 U.S. 74, 87, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (plurality opinion)). In other words, he seems to contend that *Dutton* counsels exclusion of otherwise admissible hearsay where, as here, the probative value of the evidence is especially strong. *Id.* at 5 (citing *Dutton*, 400 U.S. at 87, 91 S.Ct. 210; *Gochicoa v. Johnson*, 118 F.3d 440, 446–47 (5th Cir.1997), *cert. denied*, 522 U.S. 1121, 118 S.Ct. 1063, 140 L.Ed.2d 124 (1998)). James's reliance for this contention on *Dutton* is seriously misplaced and exposes a misapprehension of the reasoning of *Dutton*.

*Dutton* involved a question of whether a defendant's conviction must be set aside "under the impact of … decisions that have reversed state court convictions because of the denial of the constitutional right of confrontation." *Dutton*, 400 U.S. at 83, 91 S.Ct. 210. The decisions referred to included *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Brookhart v. Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Roberts v. Russell*, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). *Id.* at 83–84, 91 S.Ct. 210. The *Dutton* plurality discussed the facts and holdings of each of these cases, and then distinguished the *Dutton* case from these five cases. In so doing, the Court stated:

> This case does not involve evidence in any sense "crucial" or "devastating," as did all the cases just discussed. It does not involve the use, or misuse, of a confession made in the coercive atmosphere of official interrogation, as did *Douglas, Brookhart*, … and *Roberts*. It does not involve any suggestion of prosecutorial misconduct or even negligence, as did *Pointer, Douglas*, and *Barber*. It does not involve the use by the prosecution of a paper transcript, as did *Pointer, Brookhart*, and *Barber*. It does not involve a joint trial, as did *Bruton* [*v. United States*, 319 U.S. 123 (1968) ] and *Roberts*. And it certainly does not involve the wholesale denial of cross-examination, as did *Brookhart*.

*Id.* at 87, 91 S.Ct. 210. The plurality's use of the "crucial" or "devastating" formulation has not been understood to raise the bar of admissibility for especially weighty evidence that is properly admitted, as James argues. Rather, the "crucial" or "devastating" formulation has been interpreted as providing a check on the harmfulness of "impermissible hearsay" that should not have been admitted. *See Gochicoa v. Johnson*, 118 F.3d 440, 447 (5th Cir.1997) (noting that "by examining whether hearsay was 'crucial' or 'devastating,' the court seeks to determine whether the *impermissible hearsay* evidence was sufficiently damaging to the defense to warrant reversal") (emphasis added), *cert. denied*, 522 U.S. 1121, 118 S.Ct. 1063, 140 L.Ed.2d 124 (1998). Thus, the "crucial" or "devastating" quality of hearsay admissible over a Confrontation Clause objection because it is encompassed by a "firmly rooted" exception to the hearsay rule does not

militate against admissibility at all. *See id.* at 447, n. 5 ("The 'crucial' and 'devastating' prong of the test is therefore somewhat redundant in light of the harmless error rule."); *see also id.* at 448 (Jolly, J., dissenting) ("The majority opinion is ... correct in concluding that the most important factor[ ] in determining whether the Confrontation Clause has been violated is *whether the improperly admitted evidence was 'crucial' or 'devastating' ....*") (emphasis added). Accordingly, the statements at issue in the present case, covered as they were by the "firmly rooted" excited utterance exception, were plainly admissible.

## C. Sufficiency of the Evidence

■ James argues that even if Mrs. James's statements to officer Okun were properly admitted, the Magistrate Judge's verdict was nevertheless based on insufficient evidence. He emphasizes that his conviction was based on a single hearsay statement, "made by his wife in the heat of an argument to a police officer, which she then refused to put in writing, and refused to confirm in court. Such thin unreliable evidence is an insufficient basis for a finding of guilt beyond a reasonable doubt, particularly when the fact-finder could not make a credibility determination of Mrs. James herself." Appeal Memo at 6. I disagree.

"When reviewing challenges to the sufficiency of evidence, we determine whether 'any rational trier of fact could have found the essential elements of the charged offenses beyond a reasonable doubt.'" *United States v. Wilson,* 115 F.3d 1185, 1190 (4th Cir.1997) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The reviewing court asks whether when viewing the evidence in the light most favorable to the government, "any rational trier of facts could have found the defendant guilty beyond a

reasonable doubt." *United States v. Tresvant,* 677 F.2d 1018, 1022 (4th Cir.1982) (citations omitted). Both direct and circumstantial evidence is to be considered, and the government is provided "the benefit of all reasonable inferences from the facts proven to those sought to be established." *Id.* (citations omitted). "The uncorroborated testimony of one witness may be sufficient to sustain a verdict of guilty." *United States v. Arrington,* 719 F.2d 701 (4th Cir.1983) (citing *United States v. Shipp,* 409 F.2d 33 (4th Cir.), *cert. denied,* 396 U.S. 864, 90 S.Ct. 140, 24 L.Ed.2d 117 (1969)), *cert. denied,* 465 U.S. 1028, 104 S.Ct. 1289, 79 L.Ed.2d 691 (1984). The sufficiency of the uncorroborated testimony of a witness is based on the "probative force of the actual testimony." *Id.*

The verdict in this case is supported by the testimony of officer Okun regarding the 911 hang-up telephone call that caused him to respond to the scene, from which the reasonable inference may be drawn that there was a need for emergency assistance at the location, as well as officer Okun's personal observations of the demeanor of James and of James's wife made upon his arrival at the scene. Additionally, the excited utterance made by defendant's wife to officer Okun supports the guilty verdict. The verdict also is supported by defendant's testimony on direct examination that he and his wife were arguing when she told him to pull the car over so she could get out. Tr. I at 41. Defendant further testified that his wife got out of the car with their children and dialed 911. He stated that after his wife hung up the phone, he approached her, and she "was fussing" so he pushed her hand. Tr. I at 42.

James's principal argument is that the "hearsay" statements entered through the officer's testimony are inherently unreliable, thin, and untrustworthy. However,

the excited utterance hearsay exception is permitted, as previously discussed, because of the inherent trustworthiness of such declarations. The Advisory Committee Notes accompanying Federal Rule of Evidence 803 states the hearsay exceptions in Rule 803 "proceed upon the theory that under appropriate circumstances a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at the trial even though he may be available." The excited utterance hearsay exception is "premised on the notion that the excitement caused by the event or condition temporarily stills the capacity for reflection thus producing statements free of conscious fabrication." Michael H. Graham, Federal Practice and Procedure § 7043, at 320 (2000). More specifically,

> [because] this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or at least lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts.

*Id* § 7043, at 320 n. 2 (internal quotation marks omitted) (quoting 6 Wigmore § 1747, at 195–96 (Chadbourn rev.1976)). Therefore, the excited utterance admitted in this case is a reliable and trustworthy piece of evidence that is an appropriate part of the basis for a guilty verdict for assault.

### D.  Due Process

Finally, James challenges the procedural regularity of the proceedings below, alleging that a deprivation of fundamental fairness inhered in certain aspects of the proceedings. The trial testimony was taken on August 19, 1999, but the Magistrate Judge did not render his verdict until April 26, 2001, more than 20 months later. Thereafter, upon the completion of a presentence investigation report, the sentencing hearing was held on June 21, 2001. This admittedly prolonged course of proceeding is readily explained. The trial was continued after testimony had been taken on August 19, 1999, to permit the parties to file memoranda on the spousal privilege issue. James's original defense attorney subsequently left the Office of the Federal Public Defender, and the case was transferred to his present attorney in March 2000. James's legal memorandum was not filed until April 18, 2000. The Government responded on July 27, 2000, and James filed his reply on August 22, 2000. The Magistrate Judge issued his ruling on January 18, 2001. James then appeared before the court on April 26, 2001, for rendition of verdict. In the light of this procedural history, James argues that because the evidence was stale and because the court lacked an independent recollection of the facts of the case, James was denied a fair trial. These contentions lack merit.

James argues that the court lacked an independent recollection of the facts of the case and did not remember the evidence taken in August 1999 when the verdict was rendered in April 2001 based on the following colloquy with defense counsel:

> COUNSEL: That is my understanding from reading the transcript, Your Honor.

> COURT: Yes. That is the source of my recollection as well, is past recollection recorded instead of even refresh my recollection, I am ashamed to admit. All right.

Appeal Memo at 7–8 (quoting Tr. at 4 (Transcript of Hearing, April 26, 2001) (hereinafter Tr. II)). This colloquy has been taken out of context and in no way evidences that the Magistrate Judge did not recall the evidence adduced during the brief trial. Rather, this colloquy arose from a question presented by the court to counsel. The court asked whether there was any more evidence that needed "to be taken in the case from anybody on the issue of the merits of guilt or innocence." Tr. II at 4. The Government answered in the negative. *Id.* The court agreed, and defense counsel related to the court the statement (provided *supra*) that she understood from the transcript that there was no more evidence to be presented. *Id.* The Magistrate Judge answered (provided *supra*) that his understanding also stemmed from the transcript.[11] *Id.* From these statements, it cannot be inferred that the Magistrate Judge did not remember the evidence presented at the trial; rather, he was unsure as to whether there was to be more evidence introduced, and he wanted to ensure that the attorneys were in agreement.[12]

■ James further argues that the 20 month delay between testimony and verdict "implicates the values protected by the Speedy Trial Act, 18 U.S.C. § 3161." Appeal Memo at 8. However, James has confused the application of the Speedy Trial Act, 18 U.S.C. § 3161 with the right to a speedy trial guaranteed by the Sixth

Amendment.[13] James simply contends that the Speedy Trial Act is "implicated" and then employs *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)—a case analyzing the speedy trial right under the Sixth Amendment—to flesh out his Speedy Trial Act argument. *Id.* He does not argue that any provision of the Speedy Trial Act has been violated and has failed to show how the delay in concluding the proceedings denied his right to a speedy trial under 18 U.S.C. § 3161. Moreover, the case law is clear that the "rights of criminal defendants under the Speedy Trial Act and the sixth amendment are distinct, though obviously related." *United States v. Gonzalez,* 671 F.2d 441, 442–43 (11th Cir.1982) (citing *United States v. Edwards,* 577 F.2d 883, 887 n. 1 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978)). "Although the passage of the Act was in part an attempt by Congress to quantify the sixth amendment right to a speedy trial, the legislation does not purport to be coextensive with that amendment." *Id.* at 443. Thus, review "of compliance with the Act presents a question of statutory interpretation, while [the] sixth amendment inquiry continues to be guided by the Supreme Court's decision in *Barker v. Wingo." Id.*

In any event, James's novel "speedy trial/fundamental fairness" argument fails. *Barker v. Wingo* identifies four factors to be balanced when approaching Sixth

---

11. The defense attorney at the second proceeding on April 26, 2001 was not the same defense attorney at the original proceeding on August 19, 1999. Tr. II at 7. The second defense attorney was not present at the original proceeding. *Id.*

12. During the proceeding on April 26, 2001, the court referred to the fact that he did remember the original proceedings of August 19, 1999. For instance, he stated:

My recollection, we have no testimony of the communicative content of that [911] call whatsoever. Just that it was a call that was a hangup. It was my understanding, my recollection was it was a computer connection....

Tr. II at 8.

13. The Sixth Amendment states, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. amend VI.

Amendment speedy trial cases: length of delay, the reason for delay, the defendant's assertion of his right, and prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. 2182. James only argues the first and the fourth factor. The first factor, length of delay, "is to some extent a triggering mechanism." *Id.* "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* However, because the right to a speedy trial carries with it imprecision, "the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances to the case." *Id.* at 530–31, 92 S.Ct. 2182. In determining the fourth factor, prejudice to the defendant, the following three interests "of defendants which the speedy trial right was designed to protect" should be considered: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 532, 92 S.Ct. 2182; *see also United States v. Goodson* 204 F.3d 508, 515–16 (4th Cir.2000).

First, James argues that according to *Barker*, 407 U.S. at 530, 92 S.Ct. 2182, a one year delay is presumptively prejudicial. Appeal Memo at 9. James does not attempt to demonstrate how the 20 month delay (between the taking of evidence and announcement of the verdict) was prejudicial as required by *Barker* and as explained *supra.* As to the fourth factor, James states that the time delay resulted in prolonged "anxiety and concern," and that the court "admitted that the delay between the testimony and the verdict caused him to forget the testimony and rely solely on the transcript" *Id.* at 9. Assuming that the 20 month delay is presumptively prejudicial so that the inquiry moves onto the remaining three factors, James does not demonstrate that the delay

caused him any actual prejudice as he argues. I have already rejected James's argument that the court was unable to remember the facts and the initial proceeding of his case. Further, James has failed to demonstrate in the record that he has suffered any anxiety or concern during the 20 months between the two proceedings.

Finally, James alleges that the Magistrate Judge impermissibly relied on his personal, extra-case assessment of the Government's only witness in reaching the verdict. James argues that as the court acknowledged that he lacked personal recollection of the trial, he "made his credibility determinations of the government's only witness, Officer Okun, based on his personal recollection of Officer Okun's demeanor and actions in prior cases," tainting the verdict. Appeal Memo at 9. James seeks support for this argument in the following statement made by the Magistrate Judge in rendering his findings:

> Officer Okun's demeanor in that trial and in every other trial where I perceived him, was straightforward without embellishment, without emotion and I found his testimony then, as in all cases where he testified before me, to be highly credible.

*Id.* (quoting Tr. II at 16–17).

As stated *supra,* the Magistrate Judge in no way acknowledged that he lacked personal recollection of the trial evidence; thus, it does not follow, as James argues, that the court made its credibility determinations of officer Okun based on prior knowledge of the officer's demeanor. In addition, the above quoted statement is taken out of context. Before making this statement, the court noted that, with regards to officer Okun's credibility, that the officer had no personal interest in the outcome of the case. Tr. II at 16. Furthermore, the Magistrate Judge's statement quoted above simply demonstrates that the

court recalled officer Okun's demeanor at trial as straightforward, without embellishment or emotion. The court did not rely on an impermissible basis to judge the credibility of officer Okun by remarking that the officer's demeanor in the present case resembled that exhibited in past testimony. It was entirely proper for the Magistrate Judge to observe, as he did and in passing, that a frequent government witness has displayed a consistent (and favorable) demeanor over a series of appearances before the court.

### V. Conclusion

For all of the foregoing reasons, the judgment is affirmed. An Order follows.

### ORDER

In accordance with the Memorandum filed herewith, the judgment is this 12th day of October, 2001, AFFIRMED.

The Clerk shall TRANSMIT a copy of this Order and the foregoing Memorandum to all counsel.