**UNITED STATES of America**

v.

**Sean MOORE also know as Charles Tyson Moore**

**No. CRIM.A. 5:03–00262.**

United States District Court, S.D. West Virginia. Beckley Division.

Jan. 6, 2004.

Sean Moore, Beaver, WV, Pro se, David R. Bungard, Federal Public Defender, East Charleston, WV, for defendant.

## ORDER

CHAMBERS, District Judge.

Pending is Defendant's motion to dismiss the indictment filed in this case (doc. no. 9). The Court has considered the motion, the Government's response, and the evidence and oral argument received on January 5, 2004. For the reasons stated herein, the motion is **DENIED.**

### Background

Defendant Sean Moore is currently incarcerated at the Federal Correctional Institution at Beckley, West Virginia, where he is serving an eighty-four-month sentence imposed by the District Court for the Eastern District of Michigan for distribution of cocaine base and possession of a firearm. On May 29, 2003, Defendant was placed on administrative detention,[1] after he was discovered to have ingested 25 balloons of marijuana. Since May, Defendant has remained in administrative detention. As a result, Defendant is confined to his cell for 23 hours per day. He is entitled to one hour of recreation every day and access to a telephone once per month. He is not permitted to participate in education or work programs, although he was allowed to work as an orderly for a few weeks during his stay in the unit.

Defendant alleges that during his time in the special housing unit he was not given a copy of his incident report nor an adequate opportunity to challenge his placement. Over five months after Defendant's alleged illegal conduct, an indictment was filed on November 19, 2003.

### Discussion

Defendant moves to dismiss the indictment on the grounds that the Bureau of Prison's (BOP's) handling of his confinement and the delay between the Government's discovery of his criminal conduct and the indictment deprived him of rights guaranteed by the Fifth and Sixth Amendments to the United States Constitution. This Court has already addressed these issues in United States v. Robert Madry, Crim. No. 5:03–171.[2] As discussed in the Order for Madry and reviewed below, the Government's conduct does raise constitutional concerns, but these concerns cannot be remedied by the motion before the Court.

### Fifth Amendment

█ Defendant argues that his confinement in administrative detention, his lack of access to information, his inability to challenge his confinement, and the delay between the Government's discovery of his alleged crime and the indictment constitute a violation of the Fifth Amendment. While the defendant's allegations concern-

---

1. Bureau of Prison ("BOP") regulations define "administrative detention" as "the status of confinement of an inmate in a special housing unit in a cell either by self or with other inmates which serves to remove the inmate from the general population." 28 C.F.R. § 541.22

2. Counsel distinguishes the instant case from Madry based on this defendant's contention that he was not provided the reasons for his detention nor a meaningful opportunity to challenge it. Although these allegations raise serious concerns, they do not change the outcome of his Fifth Amendment argument.

ing these potential due process deprivations are troubling, in the context of the current motion this Court is restricted to considering whether the defendant's ability to defend against the charges in the indictment was impaired. The issue is whether the Government's actions between the time when the marijuana was discovered and the time when the indictment issued actually prejudiced the defendant from defending himself against the possession claim. Specifically, the Court must ask whether the delay in issuing the indictment and the defendant's restricted access to information or means of communication would likely affect the outcome of the criminal proceeding.

 The Due Process Clause of the Fifth Amendment "has a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). In the Fourth Circuit, courts must utilize a two-part test in analyzing whether preindictment delay mandates dismissal. First, the defendant bears the burden of demonstrating "actual prejudice" as a result of the government's delay; second, the court must weigh this prejudice against the government's justification for delay. *Jones v. Angelone*, 94 F.3d 900, 904 (4th Cir.1996). The threshold question-actual prejudice-requires a defendant to show that "he was meaningfully impaired in his ability to defend against [the government's] charges to such an extent that the disposition of the criminal proceeding was likely affected." *Id.* at 907.

Defendant concedes that he cannot identify any specific witness or item of exculpatory evidence that has been lost as a result of the passage of the last five months. He argues, however, that the deprivations he has suffered as a result of being housed in administrative detention since the discovery of his alleged crime constitute prejudice. Further, he argues that the result of the Government's delay is that he has already served a harsher sentence than he would have had he been convicted for his alleged offense in more a timely fashion.[3] The Court finds that the conditions and length of Defendant's administrative confinement do not constitute actual prejudice.

The Court is unaware of a single case in which an indictment has been dismissed based merely on the "prejudice" of pre-indictment incarceration. In fact, case law on this issue is nearly unequivocal that a defendant must be able to point to the dissipation of some sort of evidence, the presence of which would have aided in his defense. *See, e.g., United States v. McMutuary*, 217 F.3d 477, 482–83 (7th Cir.2000) (although defense witness died during preindictment delay, no prejudice inured because testimony would have been largely cumulative); *United States v. Sturdy*, 207 F.3d 448, 452 (8th Cir.2000) (although defendant was unable to locate potential witness as a result of delay, the defendant could only speculate as to that witness's testimony and was therefore unable to demonstrate prejudice); *United States v. Rogers*, 118 F.3d 466, 476 (6th Cir.1997) (no prejudice despite death of potential witness during delay because it was unclear what witness's testimony would have been); *United States v. Beszborn*, 21 F.3d 62, 66–67 (5th Cir.1994) (no prejudice from death of several witnesses during delay because defendant was un-

---

**3.** Defendant refers to the fact that he has endured administrative detention for longer than the sixty days of disciplinary segregation he would serve if found guilty by a prison disciplinary panel. However, it does appear from the record that the disciplinary segregation would further limit his activities.

able to show that testimony would have been exculpatory).

Defendant urges this Court to dismiss the indictment by finding that confinement has caused him a detriment apart from his ability to defend himself at trial. Though the Court may question the fairness of the BOP's confinement of Mr. Moore,[4] its actions have not "meaningfully impaired" his chances of success at trial, and Defendant is therefore unable to show prejudice.

*Sixth Amendment*

■■■ The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." This right exists independently of and is not coextensive with the Speedy Trial Act, 18 U.S.C. § 3161. *See, e.g., United States v. James,* 164 F.Supp.2d 718, 732 (D.Md.2001). Generally, the speedy trial right afforded by the Sixth Amendment attaches only after a formal arrest or indictment. *Jones,* 94 F.3d at 906 n. 6. As the Supreme Court has explained, this right does not apply to the period prior to arrest or official accusation:

> Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case.

*United States v. Marion,* 404 U.S. 307, 321, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The *Marion* court also held that recognizing "a general speedy trial right commencing as of the time arrest or charging *was possible* would have unfortunate consequences for the operation of the criminal justice system.... As one court said, 'the Court would be engaged in lengthy hearings in every case to determine whether or not the prosecuting authorities had proceeded diligently or otherwise.'" *Id.* at 322 n. 13, 92 S.Ct. 455 (emphasis added). Only after a court finds that a defendant's speedy trial right has been triggered, must it analyze any delay under the rubric set forth in *Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).[5]

■■■ Any determination of what government action will trigger a defendant's Sixth Amendment speedy trial right must be guided by the purposes of the right, which are "to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). None of these are affected by the transfer of an inmate from general population to administrative detention. As the Supreme Court has explained,

> The Sixth Amendment right to a speedy trial is ... not primarily intended to prevent prejudice to the defense caused

---

4. The Court also heard testimony as to the reasons for Mr. Moore's confinement, and finds that a degree of deference is appropriate where prison officials have determined that a prisoner's separation from the general population is in the best interests of his safety and the security of the facility.

5. The test is to weigh four factors: whether the pre-trial delay was uncommonly long; whether the government or the defendant is more to blame for that delay; whether the defendant asserted his right to a speedy trial in due course; and whether the defendant was prejudiced as a result of the delay. *Id.* at 655, 112 S.Ct. 2686.

by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). Defendant argues that his placement in administrative detention has disrupted his life and impaired his liberty. These disruptions and impairments, however, are *de minimis* at most, at least when compared with those faced by a non-incarcerated individual subject to an actual, physical arrest. The non-incarcerated individual, when arrested, faces utter alteration of his life: from freedom and the full enjoyment of the rights and privileges of citizenship to the status of prisoner and the limitations on liberty necessarily associated therewith. Defendant, however, merely moved from one restrictive environment to another, more restrictive environment.

The Court's conclusion in this regard is bolstered by the Supreme Court's description of the chief evils associated with lengthy pretrial incarceration:

> The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense.

*Barker v. Wingo,* 407 U.S. 514, 532–33, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Whether in the general population or administrative detention, Defendant would be subject to the conditions of confinement. Thus, the interests in avoiding those conditions are not implicated by the Government's delay. Further,

> Arrest is a *public* act that may *seriously* interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. . . . So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.

*Marion,* 404 U.S. at 320, 92 S.Ct. 455 (emphasis added).

Defendant's residence in the special housing unit certainly has some impact on his liberty, but that impact is not "serious" enough to find that he has been "arrested" within the meaning of the Sixth Amendment. And, as the Fourth Circuit has pointed out, placement in administrative detention is "not a public act with public ramifications, but a private act. Actual physical restraint may have increased and free association diminished, but unless we were to say that imprisonment ipso facto is a continuing arrest, these criteria bear little weight in the peculiar context of a penal institution." *United States v. Daniels,* 698 F.2d 221, 223 n. 1 (4th Cir.1983) (quoting *United States v. Mills,* 641 F.2d 785, 787 (9th Cir.1981)). Thus, the decision to place Defendant in administrative detention coupled with its delay in seeking an indictment may be unfair, but it does

not constitute an arrest. Therefore, Defendant's Sixth Amendment right to a speedy trial has not been implicated.

### Conclusion

Neither the Defendant's Due Process rights under the Fifth Amendment nor his right to a speedy and public trial under the Sixth Amendment have been compromised. Therefore, the Court **DENIES** Defendant's Motion to Dismiss Indictment (Doc. 9).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties and to publish this Order on the Court's website.